Argued and submitted October 28, 2014, order vacated; remanded for entry of judgment dismissing case as moot May 13, 2015

Sarah NORDBYE,
individually and on behalf of
all others similarly situated,
*Plaintiff-Respondent,*
*and*

Arlene JACKSON
and Susan Knoke,
*Intervenors-Plaintiffs/Respondents,*

*v.*

BRCP/GM ELLINGTON,
an Oregon limited liability company,
*Defendant-Appellant,*
*and*

OREGON HOUSING AND
COMMUNITY SERVICES DEPARTMENT,
*Defendant.*

Multnomah County Circuit Court
071113782; A153436

349 P3d 639

John A. DiLorenzo, Jr., argued the cause for appellant. With him on the opening brief was Davis Wright Tremaine LLP. With him on the reply brief were Timothy R. Volpert, Aaron K. Stuckey, and Davis Wright Tremaine LLP.

Stephen S. Walters argued the cause for respondents. With him on the brief were Edward Johnson, Carolyn Norton, and Oregon Law Center.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

Sercombe, P. J., dissenting.

**TOOKEY, J.**

In this interlocutory appeal in a putative class action, defendant BRCP/GM Ellington[1] contends that the trial court erred in denying its motion to dismiss for lack of subject matter jurisdiction and, in the same order, allowing intervention by two members of the putative class. In defendant's view, the named plaintiff, Sarah Nordbye,[2] had ceased to have standing and her claims had become moot. Thus, defendant argues, the trial court lacked subject matter jurisdiction over the action and could not allow intervention. We conclude that defendant is correct; the trial court should have dismissed the action. Accordingly, we vacate the order and remand for entry of a judgment of dismissal.

## I. FACTS AND PROCEDURAL HISTORY

This case, which involves low-income housing in northeast Portland, is before us for the second time. The underlying facts are set out in our first opinion, *Nordbye v. BRCP/GM Ellington*, 246 Or App 209, 266 P3d 92 (2011), *rev den*, 352 Or 33 (2012) (*Nordbye I*). Defendant owns The Ellington (the complex), an apartment complex that was funded through the federal Low-Income Housing Tax Credit (LIHTC) program. In 1990, in exchange for more than $2 million in federal tax credits, the original owner of the complex entered into a contract (extended use agreement) with the Oregon Housing Authority, the predecessor of defendant Oregon Housing and Community Services Department (department). The extended use agreement imposed use restrictions on the complex that required compliance with the LIHTC program requirements for 30 years. The original owner acknowledged the use restrictions in the Declaration of Land Use Restrictive Covenants for Low-Income Housing

---

[1] Defendant Oregon Housing and Community Services Department (department) is not a party on appeal. Throughout this opinion, we refer to BRCP/GM Ellington as "defendant"; when we refer to "defendants," we mean both BRCP/GM Ellington and the department.

[2] Nordbye was the only named plaintiff during the majority of the litigation below. The two intervenors are Arlene Jackson and Susan Knoke. We refer to Nordbye as "plaintiff" and to Jackson and Knoke as "intervenors." Because the trial court allowed intervention, plaintiff and intervenors are respondents on appeal. For the sake of simplicity, we refer to plaintiff and intervenors as "plaintiff" in describing their arguments on appeal.

Tax Credits (declaration), which was recorded in Multnomah County.

In accordance with section 42 of the Internal Revenue Code, the declaration provides that the owner

"agrees and consents that * * * any individual who meets the income limitation applicable under section 42 (whether prospective, present or former occupant) shall be entitled, for any breach of the provisions hereof, and in addition to all other remedies provided by law or in equity, to enforce specific performance by the owner of its obligations under this declaration in a state court of competent jurisdiction."

(Capitalization modified.)

The original owner subsequently transferred ownership of the project to another owner, the middle owner. After the middle owner failed to comply with the LIHTC program requirements, the department entered into an agreement (release agreement) with the middle owner that purported to release the complex from the use restrictions in the declaration. The Internal Revenue Service subsequently recaptured some of the federal tax credits that the original owner had received.

Defendant purchased the complex in 2006. Defendant evicted plaintiff, who was a qualified low-income tenant of the complex, and the other low-income tenants of the complex without cause and began renting the apartments at market rates. The evictions and market-rate rentals did not comply with LIHTC program requirements.

After plaintiff was evicted, she brought this action seeking to enforce the use restrictions in the declaration through declaratory relief under the Uniform Declaratory Judgments Act (DJA), ORS 28.010 to 28.160, and an injunction, on behalf of herself and a class consisting of qualified low-income past, present, and prospective tenants of the complex. Plaintiff sought declarations that defendant must (1) "rent all of the apartments at the [complex] to Qualified Low-Income Tenants" and (2) "comply with all of the requirements of the Declaration and the [LIHTC] Program until January 1, 2021, or such later date determined by the Court," and permanent injunctions to enforce those

declarations. She also sought attorney fees based on the declaration and an administrative rule implementing the LIHTC program in Oregon, *former* OAR 813-090-0070(6) (12/19/91). Finally, she sought "such other relief as may be just and equitable."

Plaintiff alleged that she was a qualified low-income tenant under the LIHTC program and she had been evicted from the complex in violation of the use restrictions. Plaintiff alleged that she had received an eviction notice that required her to move out of her apartment; the notice offered the option of renting a different apartment in the complex for $260 per month more than she was already paying. The complaint did not expressly allege, or pray for, damages. Plaintiff also sought relief on behalf of a class of "all Qualified Low-Income Tenants who: A) have lived at the Property since the Current Owner purchased it; or B) live at the Property now, if any[;] or C) would want to live at the Property in the future if [defendant] complied with the Declaration."

Before plaintiff moved to certify the action as a class action under ORCP 32 C, defendants moved for summary judgment on the merits of plaintiff's claim. Defendants contended that the release agreement was "valid and enforceable" against plaintiff and the putative class, and that it terminated the use restrictions imposed in the declaration. Plaintiff filed a cross-motion for summary judgment. She contended that she was entitled to judgment as a matter of law because the release agreement was ineffective to release the complex from the use restrictions imposed in the declaration and she was entitled to enforce those use restrictions. The trial court granted summary judgment to defendants, and plaintiff appealed.

On appeal, we concluded that plaintiff was a third-party beneficiary of the declaration and that defendant continued to be bound by the declaration's use restrictions notwithstanding the release agreement; accordingly, plaintiff was "entitled to enforce the declaration's use restrictions" against defendant. *Nordbye I*, 246 Or App at 230. Thus, we held, the trial court erred in granting summary judgment in favor of defendants; instead, it should have granted

plaintiff's motion for summary judgment. We reversed the trial court's judgment and remanded the case.

On remand, before the trial court entered a judgment in favor of plaintiff—and, again, before plaintiff moved for class certification—defendant sought to depose plaintiff. In lieu of being deposed, plaintiff stipulated that she no longer qualified for low-income housing under the LIHTC program and she did not intend to move back to the complex. Both defendants then moved to dismiss under ORCP 21 A(1) for lack of subject matter jurisdiction, contending that, in light of plaintiff's stipulation, plaintiff lacked standing and her claims were moot; accordingly, defendants contended, the court lacked jurisdiction. At the same time that defendants moved to dismiss, intervenors—two people who submitted declarations stating that they were income-qualified prospective tenants—moved to intervene.

After a hearing on both motions, the trial court denied the motion to dismiss and granted the motion to intervene. Pursuant to ORS 19.225,[3] the trial court then granted defendant permission to seek an interlocutory appeal of the resulting order, and we granted defendant's request for an interlocutory appeal.[4] After the trial court ruled on the motions, plaintiff moved to certify the class.

---

[3] ORS 19.225 provides, as relevant:

"When a circuit court judge, in making in a class action under ORCP 32 an order not otherwise appealable, is of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the judge shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order to the Court of Appeals if application is made to the court within 10 days after the entry of the order."

That statute allows interlocutory appeals in a case brought as a class action under ORCP 32, even where the court has not yet decided whether the action shall be maintained as a class action. *Joarnt v. Autozone, Inc.*, 343 Or 187, 194, 166 P3d 525 (2007).

[4] Plaintiff moved to dismiss the appeal, arguing that, in light of subsequent events—specifically, intervenors' filing of additional declarations clarifying their standing to intervene, a declaration by a third proposed intervenor, and the filing of another action seeking the same relief that plaintiff seeks here—our consideration of the appeal would no longer materially advance the ultimate termination of the litigation. The Appellate Commissioner denied the motion. In her brief, plaintiff renews her request that we dismiss the appeal. For the reasons expressed by the Appellate Commissioner, we decline to do so.

On appeal, defendant contends that plaintiff lacks standing to litigate this action and that her claims are moot. Accordingly, defendant argues, the trial court lacked subject matter jurisdiction when the intervenors moved to intervene, and the court erred in considering the motion to intervene; rather, it should have dismissed the action. Alternatively, defendant argues that, even if the trial court had subject matter jurisdiction to consider the motion to intervene, it erred in granting the motion.

The parties submitted evidence outside the pleadings—plaintiff's stipulation and intervenors' declarations—and the trial court considered the allegations in the complaint and the additional submissions. *See* ORCP 21 A (court may consider "matters outside the pleading, including affidavits, declarations and other evidence" in deciding a motion under ORCP 21 A(1)); *Black v. Arizala*, 337 Or 250, 265-66, 95 P3d 1109 (2004) (explaining operation of ORCP 21 A). On appeal, we likewise assume the truth of the facts alleged in the complaint to the extent that they are not contradicted by additional facts in or outside of the record.[5] *See Hale v. State of Oregon*, 259 Or App 379, 382, 314 P3d 345 (2013), *rev den*, 354 Or 840 (2014) (on appeal of the grant of a motion to dismiss under ORCP 21 A(1), assuming the truth of the well-pleaded facts in the complaint); *Beck v. City of Portland*, 202 Or App 360, 365, 122 P3d 131 (2005) (under ORCP 21 A(1), a court may rely on the facts alleged in the complaint as well as "evidence beyond the allegations in the pleadings"); *see also First Commerce of America v. Nimbus Center Assoc.*, 329 Or 199, 206, 986 P2d 556 (1999), *abrogated in part on other grounds by Kerr v. Bradbury*, 340 Or 241, 250, 131 P3d 737 (2006) ("If a case is not justiciable because an event that is not reflected in the circuit court record has rendered the case moot, then an appellate court has the inherent power to consider evidence of that event."). Accordingly, here, we assume the truth of the allegations in the complaint apart from the allegation that plaintiff qualifies for low-income

---

[5] A trial court "may determine the existence or nonexistence of the facts supporting [an ORCP 21 A] defense." ORCP 21 A. Here, however, the court did not make findings of fact, presumably because the parties stipulated to plaintiff's change of income and lack of intention to move back into the complex, which is the only evidence that contradicts any of the allegations in the complaint.

housing (because the parties stipulated that that circumstance no longer exists), and we accept the facts stated in intervenors' declarations. As explained further below, we also take note of the fact that, before the trial court, plaintiff unambiguously disclaimed any intention of seeking damages in this action.

## II.   STANDING AND MOOTNESS

We begin with defendant's argument that the trial court erred in failing to dismiss the action because plaintiff lacked standing and her claims were moot. At the summary judgment stage (that is, before the first appeal), the trial court concluded that plaintiff had standing to bring this action because she met the LIHTC program eligibility requirements, and defendant did not challenge that determination in the first appeal. *Nordbye I*, 246 Or App at 213 n 3. Defendant does not now contend that plaintiff lacked standing at the outset of the litigation. Rather, defendant argues that, by the time the trial court denied defendants' motion to dismiss, plaintiff no longer had standing under the DJA and her claims were moot.

### A.   *Standing under the DJA*

Defendant does not distinguish the matter of plaintiff's standing from the matter of the mootness of plaintiff's claims. We begin by explaining the requirements for standing under the DJA; then, after we explain defendant's argument in more detail, we discuss the relationship between standing and mootness in this case.

Standing is the concept that "identifies whether a party to a legal proceeding possesses a status or qualification necessary for the assertion, enforcement, or adjudication of legal rights or duties." *Kellas v. Dept. of Corrections*, 341 Or 471, 476-77, 145 P3d 139 (2006). The legislature defines who possesses the required status or qualification in each statutory scheme that provides for the assertion, enforcement, or adjudication of legal rights or duties. *Id.* at 477. In other words, when the legislature provides a cause of action in a statute, it also specifies the group of people who may prosecute that cause of action. Here, the statute that plaintiff relies on to enforce her rights is the

DJA. Accordingly, we look to the DJA to determine whether plaintiff has standing.

The central provision of the DJA, ORS 28.010, provides:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a judgment."

Regarding standing to seek a declaration, ORS 28.020 provides:

"Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

"A contract may be construed either before or after there has been a breach thereof." ORS 28.030.

Thus, to have standing under the DJA, a plaintiff's "rights, status or other legal relations" must be "affected by," among other things, a contract. Alternatively, because this case involves a contract rather than a statute, the plaintiff may be "interested under" a contract. ORS 28.020; *see also Doyle v. City of Medford*, 356 Or 336, 372, 337 P3d 797 (2014) (explaining standing requirements for a DJA challenge to a statute). The determination that "rights, status or other legal relations" are "affected" within the meaning of ORS 28.020 rests on three "related but separate considerations."[6] *Doyle*, 356 Or at 372; *see also Morgan*

---

[6] As the dissent points out, neither we nor the Supreme Court has held that the three "related but separate considerations" apply when a person is "interested under" a contract. The dissent would hold that plaintiff is currently a third-party beneficiary of the declaration because she is currently "an individual who meets

*v. Sisters School District #6,* 353 Or 189, 194-98, 301 P3d 419 (2013) (distilling the three considerations from the court's prior cases). First, "there must be 'some injury or other impact upon a legally recognized interest beyond an abstract interest in the correct application or the validity of [a contract].'" *Doyle,* 356 Or at 372 (quoting *League of Oregon Cities v. State of Oregon,* 334 Or 645, 658, 56 P3d 892 (2002)). Second, "the injury must be real or probable, not hypothetical or speculative." *Id.* Third, "the court's decision must have a practical effect on the rights that the plaintiff is seeking to vindicate." *Id.; see also Holmes v. Morgan,* 135 Or App 617, 624, 899 P2d 738, *rev den,* 322 Or 193 (1995) (to ascertain whether a plaintiff has standing to challenge a contract under the DJA, "[t]he proper question is whether the plaintiff has alleged an effect on some legally recognized interest great enough to assure an adversary proceeding sufficient for adequate presentation of the issues"). Although "no statute governs the issue of standing to seek injunctive relief," the Supreme Court "has long applied essentially the same standing requirements that ordinarily apply in declaratory judgment actions." *Morgan,* 353 Or at 201.

B.  *Relationship between standing and mootness*

In defendant's view, when defendant moved to dismiss, plaintiff had no prospective concrete interest in the outcome of the litigation in light of her stipulation that she

_____

the income limitation applicable under [IRC] section 42 (whether prospective, present or former occupant)." Accordingly, in the dissent's view, plaintiff is "interested under" the declaration and she has standing to enforce it regardless of whether the three considerations are satisfied. 271 Or App at 193-94 (Sercombe, P. J., dissenting).

We disagree with the dissent that the relevant text of the declaration—"an individual who meets the income limitation * * * (whether prospective, present or former occupant)"—includes "a former tenant who met applicable income limitations at the time of his or her tenancy." 271 Or App at 189 (Sercombe, P. J., dissenting). In our view, plaintiff is no longer a third-party beneficiary of the declaration because she no longer "meets the income limitation" and does not intend to move back to the complex. It follows that plaintiff is not "interested under" the declaration. Accordingly, we need not, and do not, consider whether the requirements for standing are different when a person "interested under" a contract seeks a declaration of "rights, status, and other legal relations." ORS 28.010; ORS 28.020.

did not meet the income limits of the LIHTC program and she had no interest in moving back into the complex. In other words, defendant contends that plaintiff both lacked standing under the DJA and her claims were moot—and, accordingly, nonjusticiable—because the "court's decision no longer [would] have a practical effect on or concerning the rights of [plaintiff]." *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993).

Although the contours of standing are statutory, not constitutional, *Kellas*, 341 Or at 476-77, whereas mootness has constitutional underpinnings, *Yancy v. Shatzer*, 337 Or 345, 362, 97 P3d 1161 (2004), the two concepts pose the same question under these particular circumstances. The essential question as to mootness is whether the "court's decision no longer will have a practical effect on or concerning the rights of the parties." *Brumnett*, 315 Or at 406. As noted above, the Supreme Court has recently explained that statutory standing under the DJA includes an identical "practical effects" requirement. *Morgan*, 353 Or at 197.

Thus, although we must address nonconstitutional questions—including the standing requirement of the DJA—before constitutional ones, *US West Communications v. City of Eugene*, 336 Or 181, 191, 81 P3d 702 (2003), in this case our resolution of whether plaintiff has standing also resolves the constitutional question whether her claims are moot. In sum, in light of the Supreme Court's holding that the practical effects requirement that we consider to determine whether a controversy is moot is also part of the statutory standing inquiry under the DJA, we address the statutory question and the constitutional question together; we perceive no basis for distinguishing between the two.[7] *See Orr v. East Valley Water District*, 203 Or App 430, 437, 125 P3d 834 (2005), *rev den*, 340 Or 308 (2006), *abrogated in part by Kellas v. Dept. of Corrections*, 341 Or 471, 145 P3d 139 (2006) (addressing issue of statutory standing and issue

---

[7] Because the parties have not addressed it and it has no effect on the outcome here, we need not, and do not, decide whether a plaintiff must retain statutory standing throughout the action or, instead, whether it is sufficient for a plaintiff to have standing at the outset, as long as the plaintiff's claim does not become moot before entry of judgment.

of justiciability together where the analysis of the two issues was "essentially identical").

## C. *Plaintiff's arguments*

In response to defendant's arguments, plaintiff contends that she still has standing, and that her claims are not moot, notwithstanding the facts that she is no longer eligible for the LIHTC program and does not intend to move back into the complex. She points out that, in *Nordbye I*, we concluded that she was "interested in" the contract; she was a third-party beneficiary of the declaration. Plaintiff asserts that her rights as a third-party beneficiary of the declaration were violated when defendant evicted her in violation of the LIHTC requirements; that injury has already occurred, so it is not hypothetical or speculative.

As to the final, forward-looking, requirement of standing—the one that overlaps with mootness—plaintiff contends that the court's issuance of a declaration that defendant "is required to * * * comply with all of the requirements of the Declaration and the [LIHTC] Program until January 1, 2021, or such later date determined by the Court," will "have a practical effect on the rights that * * * plaintiff is seeking to vindicate," *Doyle*, 356 Or at 372, for two reasons. First, plaintiff argues that she is entitled to file a petition seeking supplemental relief, including damages, under ORS 28.080, which provides:

> "Further relief based on a declaratory judgment may be granted whenever necessary or proper. The application thereof shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment to show cause why further relief should not be granted forthwith."

Plaintiff points out that supplemental relief available under ORS 28.080 includes damages, *Ken Leahy Construction, Inc. v. Cascade General, Inc.*, 329 Or 566, 574-75, 994 P2d 112 (1999), and that a plaintiff who ultimately seeks damages under ORS 28.080 need not plead damages in the original declaratory proceeding, *Dry Canyon Farms v. U. S. National*

*Bank of Oregon*, 96 Or App 190, 193-94, 772 P2d 1343 (1989). Thus, according to plaintiff, this action continues to have a practical effect on her rights because it will entitle her to an award of damages. Second, plaintiff contends that she retains standing and this case is not moot because she may be entitled to an award of attorney fees.

1.  *Damages under ORS 28.080*

We first consider plaintiff's argument regarding ORS 28.080 and damages. At the outset of the action, plaintiff had standing to bring this action under the DJA. Plaintiff's rights were "affected by" the declaration: First, she suffered a legally cognizable injury when she was evicted from the complex in violation of the declaration's use restrictions. Second, because the eviction had already occurred when she brought the action, the injury was real, not hypothetical or speculative. Third, and finally, the court's decision would have had a practical effect on the rights that plaintiff was seeking to vindicate by allowing plaintiff to move back into the complex.

However, in light of her stipulation that she no longer qualified for low-income housing under the LIHTC program and did not intend to move back to the complex, plaintiff lacked standing and her claims were moot by the time defendant moved to dismiss. After the change in plaintiff's circumstances that was reflected in the stipulation, plaintiff's right against wrongful eviction from the complex would not have been vindicated by the declarations and injunctions that she sought because, although the declarations and injunctions would have established that she had been wrongfully evicted, those remedies would not have had any practical effect on her rights, given that she was no longer eligible for the LIHTC program and did not want to move back into the complex.

We need not consider whether, under different circumstances, a plaintiff's unpleaded future entitlement to damages under ORS 28.080 might keep a plaintiff's DJA claim alive by allowing an inference that the plaintiff would seek damages after entry of a declaration. That is so because, here, plaintiff has foreclosed that inference by repeatedly disclaiming any intention of seeking damages in this action.

For example, at a hearing before the motion to dismiss was filed, plaintiff's counsel explained that "[t]he end game here is just injunctive and declaratory relief. There's no damages. So the final piece of paperwork here is going to be a permanent injunction[.]" At the hearing on the motions to dismiss and intervene, plaintiff's counsel noted, "It's also important to look at what is not sought in this case. No damages. There are no damages in this case." In light of those statements, this is not a case where we can infer that plaintiff will seek damages under ORS 28.080. Plaintiff has stated that she does not intend to do so, and we must take her at her word.[8] Accordingly, when the trial court denied defendants' motion to dismiss, the declarations and injunctions that plaintiff sought would have had no practical effect on her rights.

## 2. *Attorney Fees*

Plaintiff nonetheless contends that her entitlement to attorney fees prevented her claims from becoming moot.[9] In *Charles Wiper Inc. v. City of Eugene*, 235 Or App 382, 232 P3d 985 (2010) (*Wiper*), we applied the reasoning that the Supreme Court articulated in *Kay v. David Douglas Sch. Dist. No. 40*, 303 Or 574, 738 P2d 1389 (1987), to reject a similar argument. In *Wiper*, a landowner, Wiper, sought a writ of mandamus to require the City of Eugene to process its Measure 37 claim. 235 Or App at 384. While the case was pending, the voters passed Measure 49, which extinguished Wiper's entitlement to have its Measure 37 claim processed. *Id.* at 385. Before Measure 49 went into effect,

---

[8] We express no opinion on whether plaintiff could change her mind and seek damages under ORS 28.080 after obtaining the declaration she seeks. For our purposes—determining whether plaintiff had standing and whether her claims were moot when defendant moved to dismiss—the question is whether plaintiff then intended to seek damages. Plaintiff's statements, noted above, demonstrate that she did not. *See Brumnett*, 315 Or at 407 ("The mere possibility that the state might seek [an order requiring the petitioner to pay the cost of his care at the state hospital] at some future date is not sufficient to make dismissal inappropriate. The state has not said that it intends to seek any reimbursement from petitioner.").

[9] Plaintiff does not contend that the provisions under which she sought fees provide for other than prevailing-party fees. *See Crandon Capital Partners v. Shelk*, 342 Or 555, 562, 157 P3d 176 (2007) (noting that "an understanding of the legal grounds upon which plaintiffs seek attorney fees is central to" determining whether a claim for attorney fees can survive the mootness of the merits of the case).

the circuit court held a hearing and issued an order stating, "'Writ to issue, and [Wiper's counsel] shall prepare Writ.'" *Id.* at 386 (brackets in *Wiper*). After Measure 49 went into effect, the court signed a general judgment, issued the writ, and awarded the landowner attorney fees. *Id.*

On appeal, we held that the trial court erred by issuing its judgment and the writ after the case had become moot. We explained:

"[I]t is clear that, at least as of December 6, 2007, [when Measure 49 became effective,] there was no justiciable controversy between Wiper and the city regarding the processing of the Measure 37 claim. That is so because, regardless of how Wiper's claim was subsequently processed after the writ issued—*i.e.*, whether the claim was granted or denied by the city—the city's decision would have had no viability under current law. Rather, as of December 6, 2007, any such claim needed to be processed pursuant to Measure 49. Thus, the case was already moot when the circuit court entered the general judgment that is now before us."

*Id.* at 387 (citations omitted).

We rejected Wiper's contention that the case had been decided by the November 30 order, noting that, notwithstanding that order, the writ was not signed until December 26 and did not actually issue until January 4, 2008, along with the judgment. We explained:

"It is the judgment—not the court's November order—that finally determined the parties' rights and obligations. *See* ORS 34.240 (*"From the judgment of the circuit court * * * refusing to allow a mandamus, or directing a peremptory mandamus, an appeal may be taken in like manner and with like effect as in an action."* (Emphasis added.)); *State ex rel Lowell v. Eads*, 148 Or App 56, 60-61, 939 P2d 74 (1997) (order directing peremptory writ to issue is not a final, appealable action; mandamus statutes require entry of a judgment). Thus, regardless of whether the action was moot at the time of the November order, the court did not have authority to later enter the general judgment and issue the writ when, by that time, there was no longer any live controversy between the parties."

*Id.* at 388 (footnote omitted). Accordingly, we also rejected Wiper's argument that, "even if the underlying mandamus

dispute was nonjusticiable, it nonetheless formed the predicate for the circuit court's attorney fee award." *Id.* We reasoned that "the court's subsequent attorney fee award did not revive a controversy that had already become moot by the time the circuit court entered judgment on the merits. And, in the absence of a favorable judgment on the merits, Wiper had no entitlement to attorney fees as a 'prevailing party.'" *Id.* at 390. Accordingly, we vacated the judgments of the circuit court and remanded for entry of a judgment dismissing the mandamus petition as moot. *Id.*

Here, as in *Wiper*, the trial court lacked jurisdiction and was required to dismiss the case after plaintiff's claims became moot as to the declaratory and injunctive relief, because the court had not entered a judgment in plaintiff's favor and thus had not "finally determined the parties' rights and obligations." *Id.* at 388. In our decision in *Nordbye I*, which was made effective by an appellate judgment, *see International Brotherhood v. Oregon Steel Mills, Inc.*, 180 Or App 265, 271-72, 44 P3d 600 (2002) (appellate decision effective upon issuance of appellate judgment), we reversed the trial court's judgment in favor of defendants, informed the trial court that plaintiff was entitled to summary judgment, and remanded the case. However, it remained for the trial court to enter a judgment for plaintiff. When plaintiff's claims for declaratory and injunctive relief became moot, the trial court was foreclosed from entering that judgment. *Wiper*, 235 Or App at 388 (court lacked authority to enter a general judgment and issue the writ at a time when there was no longer a live controversy between the parties).

When defendant moved to dismiss, the trial court had not finally determined the parties' rights and obligations. It follows that plaintiff was not yet entitled to a prevailing-party attorney fee award, so her interest in such an award could not prevent the case from becoming moot. *Wiper*, 235 Or App at 390; *see also Krisor v. Henry*, 256 Or App 56, 60, 300 P3d 199, *rev den*, 353 Or 787 (2013) ("Where a case has become moot before entry of judgment, the entire case, including attorney fees, is moot."); *Tanner v. OHSU*, 157 Or App 502, 511, 971 P2d 435 (1998) (*"By the time the trial court entered its judgment*, it could order no relief against any of the state defendants in this case. Its decision to declare

that the state defendants violated the law, and its entry of an injunction against them, therefore, were erroneous." (Emphasis added.)).

Although plaintiff points to *2606 Building v. MICA OR I Inc.*, 334 Or 175, 47 P3d 12 (2002), in support of her view that the possibility of an attorney fee award prevented her claims from becoming moot, that case does not address the issue presented here. Rather, the question there was whether the expiration of the lease that gave rise to the dispute, which occurred during the pendency of the appeal, rendered the *appeal* moot. *Id.* at 179 n 2. The Supreme Court explained that the appeal was not moot notwithstanding the expiration of the lease because the trial court had awarded prevailing-party attorney fees as provided in the lease and that award required the Supreme Court to evaluate the merits to determine whether the trial court had correctly awarded fees. *Id.*

In *2606 Building*, then, the question was whether, under the circumstances, the *appellate court* had jurisdiction to review a trial court judgment that had been entered when the trial court had subject matter jurisdiction. By contrast, in this case, as we have explained, the problem is that the trial court had not entered a judgment on the merits when plaintiff's claims became moot and, accordingly, the *trial court* lacked jurisdiction to enter such a judgment. Because the trial court lacked jurisdiction to enter a judgment on the merits and plaintiff could not become the prevailing party without obtaining a judgment on the merits, plaintiff could not become entitled to an award of prevailing-party attorney fees.

### III. SPECIAL CONSIDERATIONS FOR CLASS ACTIONS

As described above, plaintiff's claims were moot at the time of the motion to dismiss. Given that circumstance, we must decide whether the trial court nonetheless had jurisdiction to consider the motion to intervene. Plaintiff contends that it did because she pleaded the action as a class action under ORCP 32. In support of that argument, plaintiff notes that, in federal court, "[w]hen mootness of the named plaintiff's claims occurs [before certification,]

intervention by absentee class members is freely allowed in order to substitute them as class representatives." William B. Rubenstein, *Newberg on Class Actions* § 2.17, 140 (5th ed 2011).

The fact that the action was pleaded as a class action did not give the trial court jurisdiction notwithstanding the mootness of plaintiff's claims. First, much of the federal case law that plaintiff relies on is not applicable here. Several—though not all—of the cases cited in support of the proposition quoted above involved questions of mootness that arose after the named plaintiff moved for class certification, *e.g.*, *Rosetti v. Shalala*, 12 F3d 1216, 1232 n 33 (3d Cir 1993) (appeal of dismissal without considering motion to certify class was justiciable notwithstanding subsequent mootness of named plaintiff's claim), or where intervention was sought before the named plaintiff's claim became moot, *e.g.*, *Swan v. Stoneman*, 635 F2d 97, 99, 102 n 6 (2d Cir 1980) (intervention sought three days before the named plaintiff died). *But see, e.g., Clarkson v. Coughlin*, 783 F Supp 789, 795 (SDNY 1992) ("From the time a class action is filed until the time a final determination pursuant to Rule 23 is made, the action is treated as if the class existed for purposes of mootness."). Neither of those circumstances exists here. As we have explained, plaintiff's claims were moot before plaintiff moved to certify the action as a class action and before intervenors moved to intervene.

Second, federal cases allowing the continuation of an uncertified class action after the named plaintiff's claims become moot rely on an understanding of the mootness doctrine that differs from ours. As Judge Posner has observed:

"Strictly speaking, if no motion to certify has been filed * * *, the case is not yet a class action and so a dismissal of the named plaintiffs' claims should end the case. If the case is later restarted with a new plaintiff, it is a new commencement, a new suit. But the courts, both federal and Illinois, are not so strict. Unless jurisdiction never attached * * * or the attempt to substitute comes long after the claims of the named plaintiffs were dismissed * * * substitution for the named plaintiffs is allowed."

*Philips v. Ford Motor Co.*, 435 F3d 785, 787 (7th Cir 2006) (citations omitted). However, unlike the courts discussed in *Philips*, Oregon courts *are* so strict with respect to the doctrine of mootness. In *Yancy*, the Supreme Court explained that the judicial power granted by the Oregon Constitution does not encompass "the power to decide cases that [have] become moot at some stage of the proceedings." 337 Or at 362. That principle militates against the conclusion that plaintiff's claims, which became moot when plaintiff no longer qualified for low-income housing under the LIHTC program and did not intend to move back to the complex, could sustain the case until the later appearance of intervenors. *See also State v. Hemenway*, 353 Or 498, 504, 302 P3d 413 (2013) (vacating a Supreme Court decision issued after the defendant had died, on two alternative grounds; one was that "the absence of an 'existing controversy' means that [the Supreme Court] lacked 'judicial power' conferred by Article VII (Amended), section 1, of the Oregon Constitution to issue the decision that it did").

We recognize that unnamed class members have some procedural protections in an action filed as a class action, even before a certification decision. *See, e.g.*, ORCP 32 D (requiring notice to class members upon dismissal of uncertified class action under certain circumstances); ORCP 32 N (tolling statute of limitations "for all class members upon the commencement of an action asserting a class action"). However, we do not understand those protections to demonstrate that the unnamed members of an uncertified class have interests in the action sufficient to prevent it from becoming moot when the named plaintiff's claims become moot. Rather, given that Oregon courts lack the power to decide cases that have become moot at some stage of the proceedings, we cannot assume that, even though the claims of the only named plaintiff have become moot, claims of unnamed class members have not.

Under these circumstances—where plaintiff did not move to certify the class and intervention was not sought until after plaintiff's claims became moot—the case became moot along with plaintiff's individual claims and,

accordingly, the trial court lacked jurisdiction to consider the motion to intervene.[10]

Order vacated; remanded for entry of judgment dismissing case as moot.

**SERCOMBE, P. J.,** dissenting.

The majority concludes that (1) plaintiff had standing to enforce the low-income rental obligations in the extended use agreement and recorded declarations by filing a complaint seeking declaratory and injunctive relief, (2) plaintiff lost that standing when she no longer qualified as a prospective low-income tenant in the apartment building, (3) the case was no longer justiciable when that standing was lost, and (4) the only authority that remained with the trial court was to dismiss the case. The majority errs in concluding that only prospective low-income tenants— that is, persons who currently meet the income restrictions to qualify as low-income tenants—have standing to enforce the extended use agreement and recorded declarations.

As noted by the majority, "'[s]tanding' is a legal term that identifies whether a party to a legal proceeding possesses a status or qualification necessary for the assertion, enforcement, or adjudication of legal rights or duties." *Kellas v. Dept. of Corrections*, 341 Or 471, 476-77, 145 P3d 139 (2006). "[W]hether a person is entitled to seek judicial relief depends upon the type of relief sought and commonly is governed by a specific statutory standard." *Eckles v. State of Oregon*, 306 Or 380, 384, 760 P2d 846 (1988). Here, as a former qualified tenant in the building, plaintiff has continued standing to enforce the agreement and the recorded declarations, and to seek a determination of the validity of the release agreement. That standing is conferred by federal statute and explicit provisions in the agreement and declarations, and, for class action purposes, by ORCP 32 A. In the first round of this litigation, we recognized "qualified

---

[10] We note the possibility that, if plaintiff had moved to certify the class before defendants moved to dismiss, it might have been proper for the court to decide whether the class should be certified in aid of determining whether it had subject matter jurisdiction based on the class members' interest in the case. However, as we have noted, plaintiff did not move to certify the class until after the trial court ruled on defendants' motion to dismiss.

tenants enforcement rights" under the federal Low-Income Housing Tax Credit (LIHTC) program. *Nordbye v. BRCP/GM Ellington*, 246 Or App 209, 229, 266 P3d 92 (2011), *rev den*, 352 Or 33 (2012) (*Nordbye I*). In my view, those enforcement rights are not limited to current or prospective tenants, and, accordingly, regardless of the fact that in the time since this action was filed plaintiff's income has increased and she no longer desires to move back into the building, she continues to have standing to maintain this action. I respectfully dissent from the majority's analysis to the contrary.

As a former occupant, plaintiff has standing to seek enforcement of the extended use agreement and declaration under federal statute. Specifically, Internal Revenue Code section 42(h)(6)(B) sets forth the required content of an "extended low-income housing commitment" agreement between a taxpayer seeking low-income housing tax credits and the state agency administering the tax credit program. Section 42(h)(6)(B) requires, among other things, (1) that the agreement commit the taxpayer and its successors to provide housing to low-income tenants for a specified period of time, (2) that "individuals who meet the income limitation applicable to the building under subsection (g) (whether prospective, present, or former occupants of the building)" have the right to enforce the extended low-income housing commitment "in any State court," and (3) that those commitments be "recorded pursuant to State law as a restrictive covenant." The majority understands IRC section 42(h)(6)(B) to reference only persons who currently meet the income limitation for an existing or future tenancy. In my view, that understanding of the statute is incorrect.

The "income limitation applicable to the building under subsection (g)" is an income limitation while occupying the building as a tenant. Thus, subsection 42(g) requires a specified percentage of the residential units in the building to be "occupied by individuals whose income is 50 percent or less of area median gross income [or 60 percent in other cases]." Furthermore, the statutory suit authorization specifically allows enforcement by "former occupants" of the building. IRC § 42(h)(6)(B). Reading those provisions

together, in my view, the phrase "individuals who meet the income limitation applicable to the building" in IRC section 42(h)(6)(B) refers to the income of the person at the time they became a tenant. In other words, the phrase refers to prospective, present, or former tenants who met the income limitation at the time they became past or current tenants or who meet the income limitation for purposes of a prospective tenancy. That understanding is also consistent with IRC section 42(g)(2)(D), which provides, generally, that, "notwithstanding an increase in income of the occupants of a low-income unit above the [applicable income limitation], such unit shall continue to be treated as a low-income unit if the income of such occupants initially met such income limitation * * *." In other words, an increase in a tenant's income does not disqualify a tenant from continuing to be qualified as low-income.

In view of those provisions, I conclude that a former tenant who met applicable income limitations at the time of his or her tenancy has standing to enforce the extended use agreement and declarations. Here, plaintiff is a former occupant of defendant's building who qualified as low-income during her tenancy. *See Nordbye I*, 246 Or App at 213 n 3. In light of that status, she is authorized by IRC section 42(h)(6)(B) to bring an action to enforce the extended low-income housing commitment in the extended use agreement and declarations.

That understanding of the statute is also supported by Congress's design of the LIHTC program, as we discussed in *Nordbye I*. As we recognized in *Nordbye I*, the "private enforcement rights conferred on qualified low-income tenants are an integral part of Congress's comprehensive design." 246 Or App at 229. Furthermore, those tenant enforcement rights continue throughout the entire 30-year extended-use period:

"To effectuate continued enforcement, Congress conferred on qualified tenants enforcement rights for the duration of the 30-year extended-use period. IRC § 42(h)(6)(B)(ii). The private enforcement mechanism included in the tax code and restated in the declaration ensures full performance of the promises made by a recipient taxpayer after

the tax credits are fully allocated and the recapture period has passed."

*Id.* In other words, once a person becomes a qualified tenant, that person can enforce the extended use agreement anytime during the 30-year extended-use period. Thus, again, as a former tenant who was income-qualified at the time she occupied the building, plaintiff has standing to enforce the declaration and extended use agreement.

I further note that the department's administrative rules similarly recognize a former tenant as qualified to enforce an extended use agreement and related declarations. As part of its authority under ORS 456.559(1)(f) to administer the LIHTC program, the department adopted a set of rules.[1] One of those rules, *former* OAR 813-090-0029(2) (12/19/91), provides:

"An executed Reservation and Extended Use Agreement *shall be enforceable in any State court by an individual who qualified for occupancy by virtue of the income limitation set for such buildings*; shall be binding on all successors of the Applicant; and the Declaration of Land Use Restrictive Covenants incorporated within the Reservation and Extended Use Agreement shall be recorded pursuant to State law as a restrictive covenant."

(Emphasis added.) *Former* OAR 813-090-0070(5) and (6) (12/19/91) provide for enforcement of the recorded declarations by tenants and allowance of attorney fees to those tenants in any enforcement action:

"(5)   The Declaration of Land Use Restrictive Covenants shall be deemed a contract enforceable by one or more tenants as third-party beneficiaries of the Declaration of Land Use Restrictive Covenants and Reservation and Extended Use Agreement.

---

[1] As described by *former* OAR 813-090-0005 (12/19/91),

"[t]he rules of OAR 813, division 090, are established to administer and enforce ORS 456.515 through 456.720, and specifically ORS 456.559(1)(f). These rules implement the Low-Income Housing Tax Credit Program. The Program's objective is to assist and encourage the development of affordable housing rental units for low-income households through the allocation of housing tax credits as provided by Section 42 of the Internal Revenue Code (IRC)."

"(6) In the event the Project owner fails to satisfy the requirements of the Declaration of Land Use Restrictive Covenants and Reservation and Extended Use Agreement and legal costs are incurred by the Department or one or more tenants or beneficiaries, such legal costs, including legal charges and court costs (including the costs of an appeal), are the responsibility of and may be recovered from the project owner."

In *Nordbye I*, we explained that those administrative rules appeared to preclude the "abrogation of plaintiff's enforcement rights." 246 Or App at 228 n 18. Likewise, here, that rule is consistent with my conclusion that, as an individual who qualified for occupancy by virtue of the income limitation set for defendant's building, and as a tenant and beneficiary of the declarations, plaintiff has standing to bring and maintain the enforcement action.

To reiterate, provisions of IRC section 42 specifically authorize plaintiff—as a former tenant of the building who met the relevant income limitations at the time of her tenancy—to bring an action to enforce the extended use agreement and declarations. Plaintiff's amended complaint seeks "a permanent injunction prohibiting the Current Owner and any successor or assign from renting any apartment at the Property to members of the public who are not Qualified Low-Income Tenants, which injunction shall remain in effect until January 1, 2021 or such later date determined by the Court." Thus, plaintiff's action is just the type of enforcement action authorized by rule and statute and she continues to have standing to maintain that action.

Furthermore, contrary to the majority's conclusion, plaintiff has standing to maintain her action for declaratory judgment under ORS 28.020. That statute provides:

"Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

Thus, as recognized by the majority, ORS 28.020 provides two alternative classes of persons who have standing to seek a declaratory judgment: (1) persons who *are interested under* a deed, will, written contract, or other writing constituting a contract; and (2) persons whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract, or franchise. With respect to that second group of persons who seek declaratory relief, our case law recognizes that we consider three things in determining whether a person's "rights, status or other legal relations" are "affected" by a governmental policy or a contract: an injury or other impact upon a legally recognized interest beyond an abstract interest in the policy or contract; an injury that is real or probable, and not hypothetical or speculative; and whether the declaratory relief will have practical effect. *See* 271 Or App at 176-77. However, those particular considerations flow from the requirement that the person's "rights, status or other legal relations" are "affected" by the policy or contract, *see Morgan v. Sisters School District #6,* 353 Or 189, 194-98, 301 P3d 419 (2013), and relate to that part of ORS 28.020.

With respect to the first group of persons who may seek declaratory relief under ORS 28.020, the statute requires only that a person be "interested under a deed, will, written contract or other writing constituting a contract." Thus, the statute unambiguously provides that, where a person has a legal "interest[]" in a contract under its terms, that person may seek to have the court determine questions relating to the construction or validity of the contract and obtain a declaration of rights, status, or other legal relations thereunder. In other words, under ORS 28.020, a person's interest under a contract is sufficient alone to give that person standing to obtain declaratory relief. In my view, at the very least, persons interested under a contract include parties to and intended beneficiaries of the contract. As to those persons, the court has authority under ORS 28.010 "to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." Similarly, rights may be declared under a contract "either before or after there has been a breach thereof." ORS 28.030.

Here, plaintiff asserts that the court has "broad power to issue declaratory judgments in actions brought by parties 'interested' under a written contract." I agree that she has standing as such an interested person. The written declarations provide that their "'benefits shall inure to the Department and any past, present or prospective tenant of the Project.'" *Nordbye I*, 246 Or App at 214. The declarations also recognize that those "'beneficiaries of the Owner's obligations hereunder cannot be adequately compensated by monetary damages in the event of any default hereunder,'" and to allow that

"'THE DEPARTMENT AND ANY INDIVIDUAL WHO MEETS THE INCOME LIMITATION APPLICABLE UNDER SECTION 42 (WHETHER PROSPECTIVE, PRESENT OR FORMER OCCUPANT) SHALL BE ENTITLED, FOR ANY BREACH OF THE PROVISIONS HEREOF, AND IN ADDITION TO ALL OTHER REMEDIES PROVIDED BY LAW OR IN EQUITY, TO ENFORCE SPECIFIC PERFORMANCE BY THE OWNER OF ITS OBLIGATIONS UNDER THIS DECLARATION IN A STATE COURT OF COMPETENT JURISDICTION.'"[2]

*Id.* at 214-15 (capitalization in original). Plaintiff, then, is a third-party beneficiary of the declarations and associated provisions in the extended use agreement, and has a specific interest in the parts of those agreements that obligate defendant under IRC section 42 and authorize her to enforce those agreements. That is the law of this case. *See Nordbye I*, 246 Or App at 223 ("[U]nder the declaration, plaintiff is an intended third-party beneficiary of the use-restrictions and *** she is independently entitled to enforce those use restrictions ***."). As a "person interested" in the declarations and extended use agreement, then, plaintiff is entitled to a determination of rights in the declarations. Thus, she can bring and maintain the declaratory judgment action pleaded in the amended complaint under ORS 28.020.

Finally, plaintiff has standing to sue under ORCP 32 A as a representative party of the class described in the amended complaint. Plaintiff pleaded that she "brings this

---

[2] The declaration is intended "to assure compliance of the Project and the Owner with IRC Section 42 and the applicable regulations."

action on behalf of a class consisting of all Qualified Low-Income Tenants" who "have lived at the Property since the Current Owner purchased it" or "live at the Property now" or "would want to live at the Property in the future if the Current Owner complied with the Declaration." The amended complaint alleges that: (1) joinder of all members of the class is impractical, (2) common fact and law questions exist about whether the property owner evicted qualified tenants without cause, rented to persons who were not qualified low-income tenants, charged excessive rents, and allowed long vacancies, and whether the release by the department violated the declarations, (3) plaintiff's claims are typical of the class claims and "based on the same factual, legal and remedial theories as the claims of the class," and (4) plaintiff will adequately represent the interests of the class.

Accepting those allegations as true for purposes of determining defendants' motion to dismiss under ORCP 21 A(1), *see Hale v. State of Oregon*, 259 Or App 379, 382, 314 P3d 345 (2013), *rev den*, 354 Or 840 (2014), plaintiff has standing to bring the class action claim under ORCP 32 A. That class action rule of civil procedure provides that

"[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if:

"A(1)   The class is so numerous that joinder of all members is impracticable;

"A(2)   There are questions of law or fact common to the class;

"A(3)   The claims or defenses of the representative parties are typical of the claims or defenses of the class;

"A(4)   The representative parties will fairly and adequately protect the interest of the class; and

"A(5)   In an action for damages, the representative parties have complied with the prelitigation notice provisions of section H of this rule."[3]

Here, the common claims of plaintiff and the class members— whether defendants remain obligated under the extended

---

[3] The class action was not brought as an action for damages, so the notice provisions under ORCP 32 H did not apply.

use agreement and declarations, notwithstanding the release of those obligations by the department—are precisely the claims that we determined in *Nordbye I*. Whether the particulars of *future* supplemental relief for plaintiff under ORS 28.080 differ from the supplemental relief that might be given to other class members is beside the point in determining whether plaintiff's *present* pleaded claims are typical of the class. *See Ken Leahy Construction, Inc. v. Cascade General, Inc.*, 329 Or 566, 572, 994 P2d 112 (1999) (warning against "conflat[ing] the analysis necessary for granting a declaratory judgment with the separate analysis necessary for determining what, if any, coercive relief is appropriate to effectuate the declaration"). Having prevailed in proving those claims in the first appeal, plaintiff is doing a good job so far in adequately protecting the interests of the class.[4] Plaintiff remains entitled to sue as a class representative under ORCP 32 A.

The court's denial of defendants' motion to dismiss is correct for each of those reasons. The majority errs in concluding that plaintiff's standing ended when she was no longer a qualified prospective tenant. Plaintiff's standing exists because she was a qualified past tenant under federal law, a third-party beneficiary of the contract sought to be enforced, and a class representative under ORCP 32 A. For those reasons, I dissent.[5]

---

[4] The trial court was troubled by dismissing the class action claims when plaintiff had already prevailed on some of those claims before this court. The court noted, "If a party is declared by the Court of Appeals to have prevailed on part of their claim, and it comes back to the Circuit Court, how can the Circuit Court enter a judgment of dismissal as if the—that Plaintiff prevailed on nothing?"

[5] Defendants concede that, if the trial court did not err in denying their motion to dismiss, it did not err in allowing the motion to intervene by plaintiffs Jackson and Knoke.