Argued and submitted February 4, affirmed December 22, 2021

## CHINESE CONSOLIDATED BENEVOLENT ASSOCIATION,
an Oregon nonprofit corporation,
*Plaintiff-Respondent,*

*v.*

## Gene M. CHIN,
Tony Hui, Kitson Yu, and
Michael Chi-Wei Chang,
*Defendants-Appellants.*

### Multnomah County Circuit Court
18CV58264; A172078

504 P3d 1196

Defendant appeals the trial court's denial of attorney fees for a special motion to strike. That motion became moot before being adjudicated on the merits due to a voluntary dismissal of the original matter. Relying on the application of a similar California statute, defendant argues that ORS 31.152(3) provides for an award of attorney fees to a defendant who filed a special motion to strike, even if the case is voluntarily dismissed for reasons unrelated to that motion and before its adjudication on the merits. Plaintiff counters that because the motion was moot and not relevant to the voluntary dismissal, that statute does not apply. *Held*: Consistent with the plain text of ORS 31.152(3), where defendants do not secure a ruling on a special motion to strike before a voluntary dismissal, and the motion plays no role in the dismissal, then ORS 31.152(3) does not allow for an award of attorney fees for prevailing on the motion.

Affirmed.

Eric J. Bloch, Judge.

Troy G. Sexton argued the cause for appellants. Also on the briefs were Alex C. Trauman and Motschenbacher & Blattner LLP.

Gary K. Kahn argued the cause for respondent. Also on the brief were Tiffany A. Elkins and Reeves, Kahn, Hennessy & Elkins.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Affirmed.

Kamins, J., dissenting.

**LAGESEN, P. J.**

When it began, this dispute was about the fallout of an irregular corporate election. In particular, it was about who, in the aftermath, were the proper officers of plaintiff, the Chinese Consolidated Benevolent Association (CCBA). But, after the CCBA voluntarily dismissed the case under ORCP 54, it became about something else: attorney fees. Namely, does ORS 31.152(3), which provides for an award of attorney fees to "[a] defendant who prevails on a special motion to strike made under ORS 31.150," provide for an award of attorney fees to a defendant who filed a special motion to strike if the case is voluntarily dismissed for reasons unrelated to the motion before a merits adjudication of the motion? We conclude, as did the trial court, that it does not. Accordingly, we affirm.

Because this matter was voluntarily dismissed before the CCBA's claims were resolved on the merits, what appear to be a number of factual disputes about the outcome of the CCBA election have not been resolved. Acknowledging that, for purposes of this opinion, we draw the facts from the complaint.

The CCBA's 2018 biennial officer-and-director election was contentious and irregular. Due to the irregularities, it could not be certified by the accounting firm hired to administer the election. Nonetheless, defendants Yu and Hui claimed to have been elected as the CCBA's president and vice president, respectively. To celebrate, they enlisted defendants Chin and Chang to organize a banquet.

To stop them, the CCBA sued defendants. It sought a declaration that the 2018 election was null and void and that the existing officers and directors would continue in their positions until a new and valid election was held. In addition, the CCBA sought to enjoin defendants from making statements "purporting to be made on behalf of the CCBA," including representations that the election was valid and that Yu and Hui were president and vice president, and from conducting business on behalf of the CCBA.

The parties initially stipulated to a temporary restraining order. Four days before the hearing on the

CCBA's motion for a preliminary injunction, defendants filed a special motion to strike under ORS 31.150, also known as an "anti-SLAPP" motion. *See Handy v. Lane County*, 360 Or 605, 612 n 4, 385 P3d 1016 (2016) (explaining anti-SLAPP terminology). Then, the court held a hearing on the preliminary injunction. Concluding that CCBA was not likely to prevail in the end, it denied the request for injunctive relief, and dissolved the temporary restraining order. About two weeks after the preliminary injunction hearing, the CCBA voluntarily dismissed under ORCP 54 A(1). No hearing was held on the special motion to strike, and no ruling on its merits was made.

After the CCBA voluntarily dismissed, defendants sought attorney fees. Although the trial court had not ruled on the special motion to strike, they asserted that ORS 31.152(3) gave the court authority to award fees nonetheless. The court denied the request for fees. It concluded that the statute did not authorize an award of fees because defendants had not obtained a ruling in their favor on the merits of their motion and, further, the motion was not the cause of plaintiff's decision to dismiss the case:

> "In conclusion, based upon a full consideration of the undisputed record and relevant law, the court holds that where there has not been an adjudication on the merits of a special motion to strike brought pursuant to ORS 31.150, and where evidence in the record supports Plaintiff's dismissal of the lawsuit for reasons having no relation to the pendency of the special motion to strike, the court cannot find that defendant 'prevail[ed]' on the special motion to strike as is contemplated in ORS 31.152(3)."

Defendants also moved for a hearing on their special motion to strike "to determine the CCBA's liability for attorney's fees under ORS 31.152," but the trial court denied that motion on the ground that the dismissal of the case had mooted the merits dispute presented by the special motion to strike.

Defendants appealed. On appeal, they contend that the trial court erred when it concluded that ORS 31.152(3) did not authorize an award of fees to them under the circumstances present in this case. Although they recognize that the text of the statute does not, on its face, plainly

authorize an award of fees under these circumstances, they argue that the policy underlying the statutes authorizing special motions to strike calls for an award of fees in these circumstances because, in defendants' view, their special motion to strike helped them achieve their "litigation objectives" by obtaining dismissal of the complaint. Alternatively, they argue that we should adopt the approaches of either *Coltrain v. Shewalter*, 66 Cal App 4th 94, 107, 77 Cal Rptr 2d 600, 608 (1998), or *Tourgeman v. Nelson & Kennard*, 222 Cal App 4th 1447, 1456-58, 166 Cal Rptr 3d 729, 737-39 (2014). Those two cases represent competing lines of California authority addressing the availability for attorney fees on special motions to strike in cases that are voluntarily dismissed before the motion is resolved on the merits. Were we to adopt the reasoning of either case, a remand would be required. The CCBA responds that the trial court's analysis was correct.

When a plaintiff voluntarily dismisses a case, ORCP 54 A(3) authorizes the court to award "any costs and disbursements, including attorney fees, provided by contract, statute, or rule." The provision, itself, does not supply a source of authority for a fee award. *Jackson v. Mann*, 207 Or App 209, 213, 140 P3d 1165 (2006). Rather, a defendant must identify some other source of law—"contract, statute, or rule"—authorizing a fee award.

Defendants point to ORS 31.152(3) as the source of authority for fees. Whether that provision authorizes fees in these circumstances—where a plaintiff voluntarily dismisses a complaint for reasons unrelated to a pending special motion to strike—presents a question of statutory construction, making our review "for legal error, employing the methodology described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009)." *Central Oregon LandWatch v. Deschutes County*, 285 Or App 267, 276-77, 396 P3d 968 (2017). Our role is to determine the meaning of the provision at issue that the enacting legislature most likely intended. *State v. Robinson*, 288 Or App 194, 198-99, 406 P3d 200 (2017). We do so by examining the statutory "text, in context, and, where appropriate, legislative history and relevant canons of construction." *Chase and*

*Chase*, 354 Or 776, 780, 323 P3d 266 (2014). In conducting that examination, we mind the legislature's instruction on how we should read its work: "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]" ORS 174.010.

As noted, the precise question before us is whether ORS 31.152(3) authorizes an award of attorney fees in connection with a special motion to strike that was neither adjudicated on the merits before the voluntary dismissal of a case, nor played a role in the dismissal. In this instance, the text of the statute is dispositive. ORS 31.152(3) states that "a defendant who prevails on a special motion to strike made under ORS 31.150 shall be awarded reasonable attorney fees and costs." The statute requires two things: (1) that a defendant "prevail" and (2) that the thing the defendant prevailed on was a "special motion to strike." That is, it does not provide for fees for prevailing in general or for prevailing on requests for relief that are not special motions to strike. Thus, although defendants qualify as the *prevailing parties* on plaintiff's claims as a result of the voluntary dismissal, *see* ORCP 54 A(3),[1] the issue for purposes of ORS 31.152(3) is whether defendants can be said to have prevailed *on their special motion* where, as here, they did not secure a ruling on it before the case was dismissed.

The ordinary meaning of the word "prevail" is "to gain victory by virtue of strength or superiority : win mastery : TRIUMPH." *Webster's Third New Int'l Dictionary* 1797 (unabridged ed 2002). In no sense here have defendants "triumphed" on their motion to strike. To triumph on a motion, a party ordinarily would need to secure a favorable ruling on the motion. Here, the trial court never ruled on the merits of the motion.

We acknowledge that it would not be implausible to read ORS 31.152(3) to embrace a broader conception of what it means to prevail, and do not rule that out. As the debate

_____

[1] Accordingly, if defendants had identified a source of authority entitling them to fees for prevailing on plaintiff's *claims*, they would be entitled to fees. But defendants have not identified any such authority in this case.

among the members of the Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources* illustrates, it would perhaps be unusual, but not unreasonable, to view a defendant whose motion was the cause for a voluntary dismissal of a complaint to have "triumphed" on the motion even without a court ruling on the merits. 532 US 598, 603, 121 S Ct 1835, 149 L Ed 2d 855 (2001) (statute authorizing fees to "prevailing party" required that party have prevailed by obtaining favorable court ruling); *id.* at 622 (Ginsburg, J., dissenting) (party that obtains "the precise relief she seeks" is a prevailing party, even without "court entry memorializing her victory").

We need not decide the question here. That is because the trial court found that plaintiff's dismissal was "for reasons having no relation to the pendency of the special motion to strike." Defendants have not challenged that determination and the record supports it. Because the motion was not the cause of the dismissal, it would be a stretch to conclude that a motion that (1) was not resolved on its merits, and (2) did not play a causal role in the outcome of the case, is a motion on which the proponent prevailed.

The California cases on which defendants rely do not convince us that the Oregon legislature intended otherwise.

We first note that ORS 31.152(3) was modeled on a similarly worded provision of California's anti-SLAPP statute. *Compare* ORS 31.152(3) *with* Cal Code Civ Proc § 425.16(c)(1) (2001). Consequently, had the California Supreme Court construed the statute before the date of Oregon's enactment, we would presume that the legislature intended to adopt that construction. *Handy*, 360 Or at 618-19. Here, though, the decisions that defendants point to are decisions of the California Courts of Appeals—some of which post-date Oregon's enactment—so no such presumption applies.

As for persuasive value, the approach taken in *Tourgeman* is fundamentally inconsistent with Oregon law. In *Tourgeman*, the court held that (1) a determination of the merits of a special motion to strike is a prerequisite to an award of attorney fees under the California analog to ORS

31.152(3); and (2) a court has jurisdiction, following the voluntary dismissal of a complaint, to determine the merits of an unresolved special motion to strike solely for the purpose of determining entitlement to attorney fees. 222 Cal App 4th at 1456-58, 166 Cal Rptr 3d at 737-39.

As a matter of Oregon law, that approach is problematic because the voluntary dismissal of a complaint renders the underlying merits of the plaintiff's claims—as well as the underlying merits of a motion attacking those claims— moot. Dismissal means that there are no longer any merits claims or defenses for the court to resolve; doing so would be advisory. And, once an underlying claim becomes moot, a court lacks jurisdiction to resolve its merits solely for the purpose of determining attorney fee entitlement. *See, e.g.*, *Nordbye v. BRCP/GM Ellington*, 271 Or App 168, 181-84, 349 P3d 639 (2015) (holding that potential entitlement to attorney fees does not permit a court to resolve the merits of an otherwise moot claim); *see also Birchall v. Miller*, 314 Or App 521, 523, 497 P3d 1268 (2021) ("[O]ur decision in *Nordbye* disposes of plaintiffs' contention that a trial court has jurisdiction to resolve an otherwise moot merits claim simply for the purpose of awarding prevailing-party attorney fees in connection with that claim."). Although the legislature could, in theory, displace this rule, we see no indication of that intention in ORS 31.152 or the other provisions of Oregon's anti-SLAPP law. In other words, we see no indication that the legislature intended to require courts to expend already limited judicial resources on the merits adjudication of a special motion to strike targeting a claim that has been dismissed voluntarily simply to get to the issue of attorney fees. Certainly, nothing in the text of ORCP 54 A suggests that the legislature contemplated courts ruling on the merits of motions to dismiss certain claims that have already been dismissed simply for the purpose of determining whether the motion would have led to dismissal had it been adjudicated.

The other case on which defendants rely is *Coltrain*. *Coltrain* holds that where a plaintiff voluntarily dismisses after the filing of a special motion to strike, whether a defendant is entitled to attorney fees on account of having "prevailed" on the motion turns on "which party realized

its objectives in the litigation." 66 Cal App 4th at 107, 77 Cal Rptr 2d at 608. The defendant in such circumstances is presumed to have prevailed on the motion but the plaintiff can prove that "it actually dismissed because it had substantially achieved its goals through a settlement or other means, because the defendant was insolvent, or for other reasons unrelated to probability of success on the merits." *Id*.

That standard—and the creation of presumptions—is too far removed from the words of ORS 31.152(3) for us to conclude that it was what the Oregon legislature intended. It, in effect, risks rewriting ORS 31.152(3) to provide for attorney fees in any matter in which a special motion to strike is filed and the defendant ultimately achieves its litigation objectives, even though the success might be unrelated to the likelihood of the defendant actually prevailing on the motion to strike. We reject it for that reason.

As we have said, we have not ruled out a reading of ORS 31.152(3) that would allow for an award of fees to a defendant in a matter voluntarily dismissed in response to a special motion to strike, before the motion is resolved on its merits, in those circumstances where it is inferable that the motion played a role in the dismissal. But we need not finally resolve the extent to which ORS 31.152(3) might authorize fees in that situation because that is not the situation here, given the trial court's supported factual finding that the CCBA dismissed for reasons unrelated to the special motion to strike.

The dissenting opinion would reach a different conclusion, relying primarily on one or the other of the California approaches and the policy underlying Oregon's anti-SLAPP provisions. That approach, in our view, falters for three primary reasons.

First, to the extent the dissenting opinion proposes that a trial court has the jurisdiction to resolve the merits of a special motion to strike a claim that was dismissed—and thus does not present a justiciable controversy between the parties—simply for the purpose of awarding attorney fees in connection with the motion, the dissenting opinion identifies no statute or other source of law granting that

authority. On the contrary, our cases have rejected the notion that a court retains jurisdiction to resolve moot merits issues simply for the purpose of determining attorney-fee entitlement.

Second, as noted, the California cases on which the dissenting opinion relies are not ones that are presumed to have been embraced by the Oregon legislature in adopting the anti-SLAPP provisions because they are products of California's intermediate appellate courts, not its Supreme Court. *Handy*, 360 Or at 618-19. In addition, as discussed above, the California Courts of Appeal have taken divergent approaches to the availability of attorney fees on a special motion to strike under these circumstances. *See, e.g.*, *Tourgeman*, 222 Cal App 4th at 1456-58, 166 Cal Rptr 3d at 737-39. That means that the cases inform our analysis only to the extent that they are persuasive of their own force. Here, the text of the statute does not strongly support either California approach, making it unpersuasive. Likewise, the legislative history of Oregon's statutes does not indicate that the legislature intended to adopt one or the other of those approaches, something we would expect to see signaled in the text of the statute, had the legislature been aware of those competing lines of authority and intended to adopt one or the other.

Third, we disagree that failing to adopt either of the two California approaches undercuts the policy underlying Oregon's statutes governing special motions to strike. In that regard, it is important to keep in mind that not all claims that arise out of the types of speech identified under ORS 31.150 are subject to dismissal under that statute's provisions or are otherwise improper attempts to squelch speech. *See Tokarski v. Wildfang*, 313 Or App 19, 24-25, 496 P3d 22 (2021) (explaining how a potentially meritorious claim challenging a defendant's unlawful conduct can be subject to a special motion to strike under ORS 31.150). A claim may arise out of the types of speech or conduct identified in ORS 31.150, but nonetheless have merit so as to withstand a special motion to strike. *See id.* (concluding that although the claim at issue arose out of protected petitioning activity for purposes of ORS 31.150, it was not subject to dismissal under ORS 31.150 because the plaintiff made a *prima facie*

showing that the defendants were acting illegally). Adopting the *Coltrain* approach to fees would mean awarding fees in cases in which the defendant ultimately might not prevail on a special motion to strike, or even prevail in the case, and would risk penalizing a plaintiff for filing a meritorious claim. Adopting the *Tourgeman* approach would mean prolonging litigation simply for the purpose of resolving the merits of a moot special motion to strike, undercutting the special motion to strike's effectiveness as a mechanism for quickly disposing of a dispute arising out of certain types of speech while at the same time burdening a plaintiff's conditional right to voluntarily dismiss under ORCP 54. *See Palmquist v. FLIR Systems, Inc.*, 189 Or App 552, 556-59, 77 P3d 637 (2003) (discussing the unconditional right to voluntary dismissal under ORCP 54 and reversing where trial court failed to enter judgment of dismissal on the plaintiff's ORCP 54 notice and, instead, proceeded to rule on pending summary judgment motion).

In fact, similar concerns led the California Supreme Court to conclude in *S. B. Beach Properties v. Berti*, 39 Cal 4th 374, 138 P3d 713 (2006), that the defendants were not entitled to attorney fees on their special motion to strike which, in that case, the defendants had filed after the plaintiffs voluntarily dismissed their complaint. The court concluded that under the "unambiguous" statutory language, the defendants were not entitled to attorney fees because they had not prevailed on their special motion to strike. The court reasoned that, to prevail on the motion, the defendants needed, at a minimum, to file it before the dismissal of the case. *Id.* at 380, 138 P3d at 716. The court additionally rejected the defendants' contention that the court had authority to resolve the motion under its authority to award attorney fees "because defendants' particular request is based on a claimed entitlement arising from their success on a motion they did not file." *Id.* The court noted that, "[i]n enacting the anti-SLAPP statute, the Legislature adopted a balanced approach to end SLAPP suits at an early stage while not jeopardizing meritorious actions." *Id.* It observed further that "[p]enalizing plaintiffs despite a voluntary dismissal would restrict their freedom of action in a manner inconsistent with the [California Code of Civil Procedure's

authorization of unconditional voluntary dismissal]. *Id*. at 382, 138 P3d at 718. Permitting defendants to recover attorney fees and costs without filing a viable anti-SLAPP motion would only prolong and likely increase the overall costs of SLAPP litigation." *Id*. In reaching that conclusion, the court noted but did not adopt the California Court of Appeals' approach to attorney fees in cases in which the voluntary dismissal occurred after the filing of a motion but before its adjudication, declaring them inapposite. *Id*. at 381, 138 P3d at 717. The court also rejected the defendants' contention that the anti-SLAPP statute should be construed broadly to allow for an award of attorney fees, pointing to the fact that such an interpretation would conflict with the plain text of the statute. *Id*. at 382, 138 P3d at 717.

Although this case is in a different posture from *S. B. Beach Properties*, in that the special motion to strike had been filed before plaintiff voluntarily dismissed, the same concerns are present here, as we have discussed, and weigh against taking either of the approaches adopted by the California Courts of Appeal. Thus, for all these reasons, we are not persuaded by the path proposed by the dissenting opinion and conclude, consistent with the plain text of ORS 31.152(3), that where, as here, defendants do not secure a ruling on a special motion to strike before a voluntary dismissal, and the motion plays no role in the dismissal, then ORS 31.152(3) does not allow for an award of attorney fees for prevailing on the motion.[2]

Affirmed.

---

[2] We note that the Uniform Law Commission recently completed a uniform act to govern anti-SLAPP litigation, the Uniform Public Expression Protection Act. Section 7 of the act explicitly addresses the issue of how voluntary dismissals relate to attorney fee entitlement. Section 7(b) provides that when a case is voluntarily dismissed without prejudice before adjudication of the merits of a special motion to strike, the moving party is entitled to the adjudication of the motion on its merits for the purpose of determining what party is entitled to attorney fees. Uniform Public Expression Protection Act § 7(b) (2020). Section 7(c) provides that when a case is voluntarily dismissed with prejudice before the adjudication of the merits of a special motion to strike, the moving party is deemed to have prevailed on the motion for the purpose of attorney-fee entitlement. *Id*. § 7(c). Should the Oregon legislature agree with either or both of those choices about how a voluntary dismissal bears on attorney fee entitlement, the Uniform Public Expression Protection Act would provide a mechanism for expressing them.

**KAMINS, J.,** dissenting.

Oregon's anti-SLAPP statute, ORS 31.150 to 31.155, is tasked with "nothing less than guaranteeing our basic First Amendment rights for our citizens without their being afraid of intimidation by powerful interests ***." Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2460, Mar 19, 2001, Tape 41, Side A (statement of Rep Kurt Schrader).[1] Granting attorney fees to defendants with meritorious anti-SLAPP motions is a necessary tool for achieving that goal.

The majority reasons that a defendant who is voluntarily dismissed from a lawsuit after filing an anti-SLAPP motion does not "prevail" and is therefore not entitled to attorney fees, if the plaintiff offers reasons for dismissal unrelated to the SLAPP motion. 316 Or App at 516. I respectfully dissent because, in my view, that interpretation discounts the intent of the legislature and provides an end-run around one of the core protections provided by Oregon's anti-SLAPP statute. The text, context, and legislative history of the attorney-fees provision, ORS 31.152(3), confirm that a defendant who files a meritorious anti-SLAPP motion is entitled to attorney fees regardless of a plaintiff's reason for abandoning the case after the fees have accrued. Accordingly, in cases involving voluntary dismissals, I would follow California's majority approach of determining whether a defendant would have prevailed on the special motion to strike when deciding whether to award attorney fees. *See Tourgeman v. Nelson*, 222 Cal App 4th 1447, 1457, 166 Cal Rptr 3d 729, 738 (2014) (concluding that the court must make a determination of whether the defendant would have prevailed on its motion to strike before awarding attorney fees).[2]

---

[1] *Cf.* Matthew D. Bunker & Emily Erickson, *#AintTurningtheOtherCheek: Using Anti-SLAPP Law as a Defense in Social Media*, 87 UMKC L Rev 801, 802 (2019) (observing that SLAPPs were initially understood "as lawsuits brought by wealthy and corporate interests bent on silencing and intimidating citizens and activists" and that "anti-SLAPP statutes were intended to protect citizens from David and Goliath power differences in litigation" (internal quotations marks omitted)).

[2] Indeed, the Uniform Law Commission recently adopted this precise approach. Uniform Public Expression Protection Act § 7(b) (2020).

The text of ORS 31.152(3) provides that "[a] defendant who prevails on a special motion to strike made under ORS 31.150 *shall* be awarded reasonable attorney fees and costs," but it does not elaborate on the meaning of "prevails." (Emphasis added.) The majority reasons that a defendant cannot be said to have "prevailed" on the motion where the plaintiff's dismissal of the underlying lawsuit is not related to the anti-SLAPP motion. 316 Or App at 520. Whether a defendant prevails on a meritorious anti-SLAPP motion, however, cannot turn on the *plaintiff's* actions after the motion was filed. There is no textual support for the conclusion that the determination of whether or not a defendant "prevails" for the purpose of attorney fees hinges on a plaintiff's motivations for dismissal. ORS 31.152(3); *see also* ORCP 54 (A)(3) (recognizing that, for determining statutorily authorized attorney fees, "[u]nless the circumstances indicate otherwise, the dismissed party shall be considered the prevailing party"). A party "prevails" on a motion when it obtains a ruling from the court saying that the motion was meritorious. Nothing in the text of the statute suggests that ruling must occur *before* a case is voluntarily dismissed.

The pertinent legislative history—which we must consider—strongly supports the conclusion that a plaintiff's reasons for dismissing a lawsuit play no role in determining whether a defendant "prevails" for the purpose of attorney fees, and instead, should depend on the merits of the anti-SLAPP motion. *See State v. Gaines*, 346 Or 160, 177-78, 206 P3d 1042 (2009) ("[W]e do not end our analysis at text and context, however. We next consider the legislative history that the parties have proffered, along with any pertinent legislative history that we independently have examined."). The attorney-fees provision, in particular, was intended to deter plaintiffs from using the legal process to harass and intimidate individuals. Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2460, Mar 19, 2001, Tape 41, Side A (statement of Rep Lane Shetterly). Testifying in support of HB 2460, Senator Ginny Burdick spoke of a constituent who successfully defended against a lawsuit targeting their speech but found themselves saddled with legal-defense bills. The constituent declared, "No sensible person of ordinary means is going

to spend $37,000 to exercise his First Amendment rights to oppose a developer." Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2460, Mar 19, 2001, Tape 41, Side A (statement of Sen Ginny Burdick). Indeed, references to the importance of the attorney-fees provision as part of the anti-SLAPP mechanism permeated discussions of the bill.[3]

Moreover, the legislature unmistakably intended to adopt California's approach for handling anti-SLAPP cases, an approach that enables defendants to recover attorney fees after a voluntary dismissal without hinging the analysis on a plaintiff's given reason for dismissal. *See Page v. Parsons*, 249 Or App 445, 461, 277 P3d 609 (2012) ("It was intended that California case law would inform Oregon courts regarding the application of ORS 31.150 to 31.155."). As the majority acknowledges, 316 Or App at 520, Oregon's similarly worded provision was "closely modeled on the California statute ***." Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2460,

---

[3] Representative Shetterly referenced the attorney-fees provision, stating:

"[I]f you are going to utilize the legal process for other than a substantial and legitimate purpose, then there are going to be risks attendant with that and those risks come in this motion to strike including attorney fees and damages if the court determines that the case has been brought frivolously. And so that seems to be a way to get at leveling the playing field, or at least giving citizens a degree of comfort in coming forward, knowing that in the event of litigation if it proves to be frivolous, if it proves to have been brought just for the purpose of harassment and intimidation, there's going to be a price to pay by the party bringing that."

Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2460, Mar 19, 2001, Tape 41, Side A (statement of Rep Lane Shetterly); *see also* Tape Recording, House Committee on Judiciary, HB 2460, Apr 16, 2001, Tape 37, Side A (statement of Rep Lane Shetterly) ("[T]he prospect of [a] special motion to strike and attorney fees should discourage frivolous litigation, which is often threatened and the tool for these kinds of lawsuits."); Tape Recording, Senate Committee on Judiciary, HB 2460, May 15, 2001, Tape 142, Side A (statement of Rep Kurt Schrader) (relating to the question of whether to make the attorney fees requirement reciprocal: "The back breaker for us on this whole issue quite frankly, to where it becomes a gutted bill of no value, is the reciprocity issue on attorney fees. *** The bill becomes of no value then. Citizens will not be able to defend themselves adequately."); Tape Recording, Senate Committee on Judiciary, HB 2460, May 15, 2001, Tape 143, Side A (comment of Chair John Minnis) (critiquing a suggestion for reciprocal attorney fees: "It seems to me that there would be kind of a chilling effect on the bill if you have a private citizen who maybe doesn't have resources or significant resources, involving yourself in a defense can be very costly.").

Mar 19, 2001, Tape 41, Side A (statement of Legislative Counsel Dave Heynderickx); Tape Recording, House Committee on Judiciary, HB 2460, Apr 16, 2001, Tape 37, Side A (statement of Rep Lane Shetterly) ("[HB 2460] is patterned after a California statute."). A sponsor of the bill, Representative Shetterly, posited that, "while the cases in California will not be controlling on the Oregon courts, I think they would at least be informative and helpful to courts and to litigants too ***." Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2460, Mar 19, 2001, Tape 41, Side A (statement of Rep Lane Shetterly). Representative Shetterly further observed that "California has a solid body of law that demonstrates that this process works ***." Tape Recording, House Committee on Judiciary, HB 2460, Apr 16, 2001, Tape 37, Side A (statement of Rep Lane Shetterly); *see also* Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2460, Mar 19, 2001, Tape 41, Side A (statement of Legislative Counsel Dave Heynderickx) ("[The California statute] has a fair amount of case law on it, including appellate cases.").

The majority reasons that we should not presume that the legislature intended to adopt the construction of California courts because, at the time of the bill's passage, the California Supreme Court had not weighed in on this issue. 316 Or App at 520. Oregon's anti-SLAPP statute was passed in 2001 and came into effect in 2002. Or Laws 2001, ch 616, §§ 1-3. However, before 2001, three intermediate appellate courts in California had concluded that a defendant may qualify as a "prevailing party" under the attorney-fees provision of the anti-SLAPP statute, even when the SLAPP suit had been voluntarily dismissed prior to a judicial ruling on the motion to strike. *Kyle v. Carmon*, 71 Cal App 4th 901, 918-19, 84 Cal Rptr 2d 303, 314-15 (1999); *Moore v. Liu*, 69 Cal App 4th 745, 751, 81 Cal Rptr 2d 807, 811 (1999), *as modified* (Feb 5, 1999), *reh'g den*, (Feb 22, 1999); *Coltrain v. Shewalter*, 66 Cal App 4th 94, 107, 77 Cal Rptr 2d 600, 608 (1998), *as modified* (Sept 4, 1998).

Indeed, by 2004, and relying almost entirely on cases that were decided before Oregon's anti-SLAPP law was passed, California appellate courts acknowledged that the issue of whether "a plaintiff may *** avoid liability for

attorney fees and costs by voluntarily dismissing a cause of action to which a SLAPP motion is directed" was "settled" under California law. *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.*, 122 Cal App 4th 1049, 1054, 18 Cal Rptr 3d 882, 885-86 (2004) (emphasis omitted). All California Courts of Appeal agree that dismissal of a SLAPP suit prior to a ruling on the merits does not preclude a court from finding that the movant prevailed for the purpose of the attorney-fees provision. *See Roe v. Halbig*, 29 Cal App 5th 286, 304, 240 Cal Rptr 3d 104, 117 (2018) (observing that "Courts of Appeal have uniformly held that a defendant may qualify as the 'prevailing party' under the anti-SLAPP statute even where the SLAPP suit has been voluntarily dismissed prior to a judicial ruling on the anti-SLAPP motion to strike").[4] Although the California Supreme Court has not squarely addressed this issue, it has acknowledged this line of California intermediate appellate decisions. *See S.B. Beach Properties v. Berti*, 39 Cal 4th 374, 381 & n 2, 138 P3d 713, 717 & n 2 (2006) (acknowledging Courts of Appeal decisions allowing attorney fees notwithstanding a voluntary dismissal, but declining to extend those decisions to cases where the defendant had not yet *filed* a potentially meritorious anti-SLAPP motion).

The majority correctly points out that, "had the California Supreme Court construed the statute before the date of Oregon's enactment, we would presume that the legislature intended to adopt that construction." 316 Or App at 520. However, that presumption does not preclude the adoption of well-settled interpretations of intermediate appellate courts from that jurisdiction. *See, e.g.*, *State v. Guzman/Heckler*, 366 Or 18, 30, 455 P3d 485 (2019)

---

[4] As the majority points out, one California case expresses a different view as to the *procedure* for determining whether to award attorney fees in that circumstance, 316 Or App at 518; however, there is no disagreement as to their availability. *Coltrain*, 66 Cal App 4th at 107, 77 Cal Rptr 2d at 608 (concluding that the trial court may determine the prevailing party for the purpose of attorney fees by determining which party realized its objectives in the litigation); *Tourgeman*, 222 Cal App 4th at 1457, 166 Cal Rptr 3d at 738 (concluding that the court must make a determination of whether the defendant would have prevailed on its motion to strike before awarding attorney fees). Most of the California Courts of Appeal have adopted the *Tourgeman* approach when dealing with voluntary dismissals. *Roe*, 29 Cal App 5th at 305, 240 Cal Rptr 3d at 118 (recognizing that "a majority of the Courts of Appeal" follow the *Tourgeman* approach).

("[A]lthough we have accorded greater significance to decisions of the highest court of another jurisdiction, we have never altogether discounted decisions of lower appellate courts of that jurisdiction, even in the absence of legislative history specifically indicating that our legislature was aware of those decisions."); *State v. Edmonds*, 364 Or 410, 422-24, 435 P3d 752 (2019) (relying on federal circuit court decisions as context for the interpretation of an OEC provision); *Lindell v. Kalugin*, 353 Or 338, 355, 297 P3d 1266 (2013) (treating a consistent pattern of lower "federal court decisions as at least highly persuasive as to the intentions of the Oregon legislature in borrowing from the federal rules"). Given the references in the legislative history to the value of California case law to the interpretation of the statute, and the importance of the attorney-fees provision to its enforcement, we, as both parties acknowledge and the trial court concluded, should consider this "settled" set of California case law and interpret our statute in a manner consistent with that view.

Finally, the context of the provision within the statute also undermines the majority's conclusion. ORS 31.152(4), the section immediately after the attorney-fees provision, provides that "[t]his section *** [is] to be liberally construed in favor of the exercise of the rights of expression described in ORS 31.150 (2)." That provision instructs us to look to the rights of defendants, not the actions or motivations of a plaintiff, when construing the attorney-fees provision of the anti-SLAPP statute. Additionally, such a provision typically reveals a legislative intent for the statute to be interpreted broadly to protect the rights of citizens even though circumstances may arise that are not neatly encompassed by the language of the statute. *See State ex rel Dewberry v. Kitzhaber*, 259 Or App 389, 403, 313 P3d 1135 (2013), *rev den*, 354 Or 838 (2014) ("Moreover, even were there any lingering doubt, we must construe the extent of the Governor's authority to sign an agreement with a tribe under the terms of ORS 190.110(3) broadly, because the legislature mandated that the provisions of ORS 190.110 be liberally construed." (Internal quotation marks omitted.)); *see also Gearhart v. PUC*, 356 Or 216, 244, 339 P3d 904 (2014) (following the legislature's direction that laws administered

by the Public Utility Commission (PUC) should be "liberally construed" to conclude that the statute contained implied authority of the PUC to order a utility to issue refunds).

The majority suggests that a problem with the dissent, and presumably California's case law,[5] is that there is no authority for the proposition that a trial court retains jurisdiction to determine attorney fees once a dismissal renders an action moot. 316 Or App at 522-23. But the authority to award fees usually arises after a case is concluded. *See, e.g.*, ORCP 68 C(4)(a) (stating that a party seeking attorney fees shall file their attorney fee statement "not later than 14 days after entry of a judgment"); ORS 20.096(1) (providing that "the party that prevails on the claim shall be entitled to reasonable attorney fees"); ORS 20.077(2) ("For the purposes of making an award of attorney fees on a claim, the prevailing party is the party who receives a favorable judgment or arbitration award on the claim."). As part of that process, courts routinely hold hearings and evaluate various aspects of the now-moot underlying litigation that may or may not have previously received a judicial determination— including the conduct giving rise to the litigation and the reasonableness of the claims and defenses. *See* ORS 20.075(1) (requiring a court to consider the "conduct of the parties in the transactions or occurrences that gave rise to the litigation" and the "objective reasonableness of the claims and defenses" when assessing fees); *Ellison v. Dept. of Rev.*, 362

---

[5] Like Oregon, California law also provides that, following the entry of a voluntary dismissal, a court generally loses jurisdiction to conduct any proceedings as to that party. *See, e.g., Frank Annino & Sons Construction, Inc. v. McArthur Restaurants, Inc.*, 215 Cal App 3d 353, 357, 263 Cal Rptr 592, 595 (1989) (acknowledging that "the general rule" is that a court loses jurisdiction over a person once they are dismissed from the action); *Pittman v. Beck Park Apartments Ltd.*, 20 Cal App 5th 1009, 1022, 230 Cal Rptr 3d 113, 123 (2018) (recognizing that "a plaintiff's voluntary dismissal of an action generally deprives the court of jurisdiction in the case").

Indeed, the California Courts of Appeal reckoned directly with this issue in the case of voluntary dismissals of SLAPP suits. *See Moore*, 69 Cal App 4th at 751 n 3, 81 Cal Rptr 2d at 811 n 3 ("It is the general rule that once a person is dismissed from a lawsuit she is no longer a party to it and the court lacks jurisdiction to conduct further proceedings respecting her. *** However, courts have carved out a number of exceptions to this rule *in order to give meaning and effect to a former party's statutory rights*. Even after a party is dismissed from the action [s]he may still have collateral statutory rights which the court must determine and enforce. These include the right to statutory costs and attorney's fees[.]" (Internal quotation marks and citations omitted; emphasis added.)).

Or 148, 166-68, 404 P3d 933 (2017), *adh'd to as modified on recons*, 362 Or 527, 412 P3d 201 (2018) (evaluating merits of parties' positions in litigation to determine who prevailed despite neither receiving relief sought in determining attorney fee award); *Beaverton School Dist. 48J v. Ward*, 281 Or App 76, 83-85, 384 P3d 158 (2016) (evaluating merits of defendants' argument in the underlying litigation post-settlement in determining attorney fee award).

The cases cited by the majority to support the proposition that Oregon courts lack jurisdiction to conduct this routine endeavor are limited to the question of whether a request for attorney fees can revive a case that has become moot due to real world events—not due to the dismissal of the case. *See* 316 Or App at 521 (citing *Nordbye v. BRCP/GM Ellington*, 271 Or App 168, 180, 349 P3d 639 (2015) (declaratory judgment claim as to requirements of low-income housing program was moot once plaintiff no longer qualified for the program); *Birchall v. Miller*, 314 Or App 521, 523, 497 P3d 1268 (2021) (dispute over possession of premises became moot when defendant vacated the premises)). A *voluntary dismissal*, on the other hand, cannot moot a claim for purposes of attorney fees. The very concept is inconsistent with the rule that voluntary dismissals pursuant to ORCP 54 (A) do "not, at least as a matter of law, negate or reduce plaintiffs' exposure to attorney fees." *Goodsell v. Eagle-Air Estates Homeowners Assn.*, 280 Or App 593, 605, 383 P3d 365 (2016), *rev den*, 360 Or 752 (2017). Indeed, evaluations of aspects of the underlying claim following a voluntary dismissal is required by the rule itself. ORCP 54 (A)(3) ("*Unless the circumstances indicate otherwise*, the dismissed party shall be considered the prevailing party." (Emphasis added.)).

Even if the cases cited by the majority were to proscribe an adjudication on the merits, the majority acknowledges that the legislature could displace this rule. 316 Or App at 521. Here, as the legislative history unmistakably reflects, the legislature did just that. Indeed, the attorney-fees provision was meant to be the principal (if not the only) deterrent for spurious SLAPP suits. Extending the rule set out in *Nordbye* and *Birchall* to cases involving voluntary dismissals of cases with pending meritorious anti-SLAPP motions is irreconcilable with that intent.

The majority's reliance on the California Supreme Court's reasoning in *S.B. Beach Properties* to support the contention that California courts have "similar concerns" in awarding attorney fees when a plaintiff voluntarily dismisses cannot be squared with the circumstances of that case. 316 Or App at 524-25. The question there was whether a party could be awarded attorney fees for prevailing on a motion that *they never filed*. *S.B. Beach Properties*, 39 Cal 4th at 377, 138 P3d at 714. In other words, it is so entrenched in California law that a defendant can recover attorney fees after a voluntary dismissal in an anti-SLAPP suit that the Supreme Court considered granting fees to a party for prevailing on an unfiled motion.

In declining to take that step, the court acknowledged that "the filing of a viable anti-SLAPP motion [is] a necessary trigger for both an imposed judgment of dismissal and an award of fees and costs" and drew a "bright line" of requiring a defendant to file the motion to avoid forcing trial courts to "evaluate the viability of an incomplete anti-SLAPP motion[.]" *Id*. at 381-83, 138 P3d at 717-18. That approach balanced the need to allow plaintiffs "the freedom to reconsider the wisdom of their actions without penalty before defendants have incurred clearly identifiable and recoverable legal fees" while still "expeditiously reliev[ing] [defendants] of the burden a SLAPP suit imposes, because they must generally file their anti-SLAPP motion within 60 days of the service of the complaint." *Id*. at 382, 138 P3d at 718 (internal quotation marks omitted). The court reasoned that "the filing of a viable anti-SLAPP motion [is] a prerequisite to recovering any fees and costs. As a matter of logic, a defendant must file a special motion to strike in order to prevail on one." *Id*. at 379, 138 P3d at 716. Contrary to the majority's suggestion, California courts have never expressed any "concerns" in awarding attorney fees to a defendant that obtained a voluntary dismissal after actually filing an anti-SLAPP motion.[6]

_____

[6] The majority further contends that the California Supreme Court "did not adopt" the intermediate appellate courts' approach of awarding attorney fees in cases that had been voluntarily dismissed but rather declared them "inapposite." 316 Or App at 525. However, the court distinguished those cases not because it disagreed, but because "[i]n each, the plaintiff voluntarily dismissed the action

By enabling a plaintiff who abuses the legal process to avoid fee liability simply by voluntarily dismissing the case and claiming that the dismissal was unrelated to the anti-SLAPP motion, the majority's opinion guts the protection currently afforded by the anti-SLAPP statute. Under that interpretation, a plaintiff can flout the purposes of the statute and use the legal system to force citizens into costly litigation that infringes on their free speech, and then evade the penalty envisioned by the legislature simply by dismissing the case before the motion can be heard by a trial court. *See Moore*, 69 Cal App 4th at 752, 81 Cal Rptr 2d at 812 ("Persons who threaten the exercise of another's constitutional rights to speak freely and petition for the redress of grievances should be adjudicated to have done so, not permitted to avoid the consequences of their actions by dismissal of the SLAPP suit when a defendant challenges it. An adjudication in favor of the defendant on the merits of the defendant's motion to strike provides both financial relief in the form of fees and costs, as well as a vindication of society's constitutional interests."). Nothing in the text, context, or legislative history supports the conclusion that the analysis turns on the plaintiff's reasons for dismissal.[7]

That approach is problematic not only because it places the power in the hands of a plaintiff in a SLAPP suit, an outcome the legislative history does not support, but because it is practically difficult to enforce. The record here provides an apt example—a plaintiff can always identify other reasons to justify dismissal. Although plaintiff here contends that its dismissal was due to the fact that the

---

*after the defendant filed an anti-SLAPP motion.*" *S.B. Beach Properties*, 39 Cal 4th at 381, 138 P3d at 717 (emphasis added).

[7] Indeed, the attorney-fees provision was meant to go beyond existing tort reform measures that protect citizens from frivolous lawsuits. *See, e.g.*, ORS 20.105(1) (awarding attorney fees if a party "willfully disobeyed a court order or that there was no objectively reasonable basis for asserting the claim, defense or ground for appeal"); Tape Recording, Senate Committee on Judiciary, HB 2460, May 15, 2001, Tape 142, Side A (statement of Rep Kurt Schrader) ("The previous reform unfortunately was not enough, and that's evident just by the sheer volume of problem that has come up since that time."); Tape Recording, Senate Committee on Judiciary, HB 2460, May 15, 2001, Tape 142, Side A (statement of Legislative Counsel Dave Heynderickx) ("[I]t's pretty hard to get an award under ORCP 17, for instance, of attorney fees. *** [HB 2460] is more aimed at the issue of getting the case out of court fast. *** The other frivolous lawsuit [statutes] aren't aimed so much at the timing issue ***.").

current board of directors had been functioning normally and there was an election for a new board approaching, the voluntary dismissal came *after* the trial court denied the motion for a preliminary injunction. In that decision, by a different judge than the one resolving the attorney fees question, the court concluded that plaintiff had little likelihood of success on the merits and observed: "[Y]ou're asking for a prior restraint on speech, you're asking to prohibit posting, publishing, making oral or written statement or announcement. That's all constitutionally protected speech." A voluntary dismissal following a decision implying that plaintiff's lawsuit both lacked merit and constituted an improper restraint on speech undermines any assertion that the dismissal is unrelated to the basis for the anti-SLAPP motion.[8] Defendants here took every step envisioned by the legislature to avoid being saddled with the bill for this litigation, even going so far as to receive vindication as to their speech rights from the trial court.

Because the attorney-fees provision of the anti-SLAPP statute was intended to be a safeguard for defendants who are exercising speech rights and a deterrent to well-funded plaintiffs who are intent on silencing them, I disagree with a construction placing the power to avoid fees in the hands of the plaintiff. Accordingly, I respectfully dissent and would reverse and remand to the trial court to determine whether defendants would have prevailed on the merits of their motion to strike for the purpose of determining whether to award attorney fees.

---

[8] The trial court resolving the issue of attorney fees referenced the "undisputed record" in its decision regarding the reasons for plaintiff's dismissal. However, when the trial court asked if defense counsel would stipulate that the reasons for the dismissal were unrelated to the anti-SLAPP motion, defense counsel responded: "I want to say that I would stipulate to that being [the particular plaintiff's] testimony on the issue. *** I'm not going to concede that that was the point." Additionally, after the decision was made by the trial court regarding attorney fees, defense counsel submitted a declaration in support of their motion for a hearing on the substance of the anti-SLAPP motion, which contained an email from one of the plaintiffs, stating that "we were advised not to pursue the case since we were not granted the injunction."