372 December 6, 2023 No. 635

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Marcia JENKINSON
and Dan Jenkinson,
*Petitioners,*

*v.*

LANE COUNTY,
*Respondent.*

Land Use Board of Appeals
2022101, 2022102; A181949

Argued and submitted September 20, 2023.

Zachary P. Mittge argued the cause for appellant. Also on the brief was Hutchinson Cox.

Rebekah Dohrman argued the cause and filed the brief for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Reversed and remanded.

## MOONEY, J.

This land use case concerns Lane County's denial of petitioners' application for legal lot verification (LLV) of two adjacent lots.[1] The county planning director concluded that the property from which petitioners' lots were created had been unlawfully divided into four or more properties in 1961 and, therefore, denied petitioners' application for LLV. The county hearings official agreed with the planning director and affirmed the planning director's decision in separate orders, one for each lot. LUBA affirmed the hearings official's orders and this petition for judicial review of LUBA's final order followed. Petitioners assign error to LUBA's decision as unlawful in substance, arguing that the law in effect in 1961 did not require their predecessors in interest to obtain county approval before subdividing their real property into four lots, each of which was at least five acres in size. We conclude that LUBA incorrectly interpreted ORS 92.044 (1961)[2] as a delegation of authority to Lane County to adopt approval standards for such land divisions. That incorrect interpretation of the law led LUBA to affirm the denial of petitioners' LLV application, which was legal error. We reverse LUBA's final order affirming the county's decision to deny petitioners' LLV application.[3]

### STANDARD OF REVIEW

We have jurisdiction under ORS 197.850(3)(a). Petitioners challenge LUBA's final opinion and order as "unlawful in substance" under ORS 197.850(9)(a). Our task is to review "whether LUBA correctly applied the law." *Coopman v. City of Eugene*, 327 Or App 6, 10, 534 P3d 1105 (2023). The question of delegated authority was key to LUBA's decision-making process and required LUBA to interpret state law when it answered the question whether

---

[1] "'Lot' means a single unit of land that is created by a subdivision of land." ORS 92.010(4).

[2] *Amended by* Or Laws 1973, ch 696, § 9; Or Laws 1974, ch 74, § 2; Or Laws 1979, ch 671, § 1; Or Laws 1981, ch 590, § 5; Or Laws 1983, ch 570, § 1; Or Laws 1983, ch 826, § 9; Or Laws 1983, ch 827, § 19e; Or Laws 1987, ch 649, § 11; Or Laws 1989, ch 772, § 6; Or Laws 1991, ch 763, § 8; Or Laws 1993, ch 792, § 46; Or Laws 1997, ch 489, § 1; Or Laws 1999, ch 348, § 12; Or Laws 2005, ch 399, § 4; Or Laws 2007, ch 652, § 2.

[3] We need not, and do not, reach petitioners' second assignment of error.

the 1961 conveyance that created the parcel from which petitioners' lots were later created was subject to county approval as a subdivision of land. Our review, thus, includes an assessment of whether LUBA's order "represent[s] a mistaken interpretation of the applicable law." *Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 559, 30 P3d 420 (2001). Our job is to determine what the legislature most likely intended when it enacted and modified the relevant statutory provisions. *1000 Friends of Oregon v. Clackamas County*, 309 Or App 499, 504, 483 P3d 706, *rev den*, 368 Or 347 (2021). "[W]e are obligated to interpret those statutory provisions correctly, regardless of the parties' assertions of statutory interpretation." *Central Oregon LandWatch v. Deschutes County*, 285 Or App 267, 277, 396 P3d 968 (2017). We do that by examining the text of those provisions in context. *Chinese Consolidated Benevolent Assn. v. Chin*, 316 Or App 514, 518, 504 P3d 1196 (2021), *rev den*, 369 Or 855 (2022). If necessary, we may also examine any legislative history and relevant maxims of construction. *Id.*

## FACTS

Petitioners sought verification from Lane County in March 2022 that their two adjoining lots in Lane County were lawfully established units of land. Lane Code (LC) section 13.140 provides the process and criteria for determining whether a piece of real property can be verified as a legal lot. An application for LLV "will be approved if the subject property is a lawfully established unit of land as defined by [chapter 13 of the Lane Code]." LC § 13.140(3). LC section 13.030(3)(n)(ii)(aa) defines a lawfully established unit of land to be a "unit of land created[ ] [i]n compliance with all applicable planning, zoning and subdivision or partition ordinances and regulations[.]"

The county planning director determined that, in 1961, petitioners' predecessors in interest were required by the county to obtain county approval to divide their property into four or more lots. Because petitioners' predecessors did not get that approval, the planning director refused to verify petitioners' lots as lawfully established units of land. The hearings official affirmed the planning director's denial of LLV, concluding that the land division accomplished

through legal conveyances in 1961 required, but did not have, approval from the county. Addressing the county's authority to impose approval requirements when the property was divided into lots of five or more acres, despite the state defining "subdivide land" to mean the creation of plots of less than five acres, the hearings official found that "the legislature * * * expressly authorize[d] counties to impose more restrictive regulations than those set forth in statute." LUBA affirmed the hearings official's decision on appeal.

## ANALYSIS

Our analysis hinges on the interplay between state law delegating authority to counties to regulate land subdivisions, and the competing state and county definitions of "subdivide land."

Lane County did not adopt a home-rule charter under Article VI, section 10, of the Oregon Constitution until 1962, after the subject conveyances had been completed. The parties correctly agree that, because of that, Lane County's authority to adopt its own approval standards for the subdivision of land within its geographic boundaries existed only to the extent that such authority was delegated to it by the legislature, in which the "legislative power" of the state is otherwise generally vested pursuant to Article IV, section 1, of the Oregon Constitution. *See Grant County v. Lake County*, 17 Or 453, 463-64, 21 P 447 (1889) (explaining that "[a] county is mainly a mere agency of the state government[]—a function through which the state administers its governmental affairs").

The Oregon Legislature first authorized county governing bodies to adopt approval standards for the subdivision of land in 1947. Or Laws 1947, ch 537, § 7. Lane County adopted an ordinance two years later "for the purpose of adopting subdivision regulations" pursuant to "Chapter 537, Oregon Laws 1947." Lane County Subdivision Ordinance (LCSO) No. 3, § I. The ordinance included the requirement that a landowner obtain county approval when subdividing land. *Id.* § II. Oregon statutes were recodified in 1953 and subsequently referred to as the Oregon Revised Statutes. ORS chapter 215 concerns county planning and ORS

chapter 92 concerns plats and land divisions and applies both to counties and cities. In 1955, the legislature amended provisions within each of those chapters, and in particular, eliminated the definition of "subdivide land" that had been codified at ORS 215.010 and replaced it by reference to the definition of that term in ORS 92.010, which it also modified. Or Laws 1955, ch 756, §§ 1, 25.

The state laws and county ordinance that applied to the subdivision of land in Lane County in 1961 included ORS 92.010 to 92.990 (1961) and LCSO No. 3. The state statutes had not been amended in any pertinent way since 1955. State law defined "subdivide land," in 1961, as:

> "*** to partition a parcel of land into four or more parcels of less than five acres each for the purpose of transfer of ownership or building development, whether immediate or future, when such parcel exists as a unit or contiguous units under a single ownership as shown on the tax roll for the year preceding the partitioning."

ORS 92.010(2) (1961).[4] Lane County's definition of "subdivide land" in 1961 was:

> "*** to partition, plat, or subdivide land into four (4) or more lots, blocks, or tracts, or containing a dedication of any part thereof as a public street or highway, for other than agricultural purposes."

LCSO No. 3, § II. Lane County's definition was, thus, broader than that of the state. The state statute defined "subdivide land" to include subdivisions of a parcel of land within a single tax year that resulted in creating four or more parcels less than five acres in size. The county ordinance defined "subdivide land" to include subdivisions that resulted in four or more parcels, without time or size limitations. Therefore, the requirement in LCSO No. 3 that a landowner obtain county approval when subdividing land applied to more land divisions under the county definition than the state definition. It bears noting that LCSO No. 3

---

[4] ORS 92.010 (1961), *amended by* Or Laws 1973, ch 696, § 3; Or Laws 1977, ch 809, § 4; Or Laws 1979, ch 46, § 1; Or Laws 1985, ch 369, § 5; Or Laws 1985, ch 717, § 1; Or Laws 1989, ch 772, § 1; Or Laws 1991, ch 763, § 1; Or Laws 1993, ch 702, § 1; Or Laws 1993, ch 704, § 4; Or Laws 1995, ch 382, § 3; Or Laws 1997, ch 268, § 1; Or Laws 2001, ch 544, § 3; Or Laws 2005, ch 399, § 1; Or Laws 2007, ch 652, § 1; Or Laws 2007, ch 866, § 4; Or Laws 2008, ch 12, § 3.

applied, but only to the extent that it was authorized by statute and so long as it did not contravene state law. "The validity of local action depends, first, on whether it is authorized by the local charter or by a statute[;] *** second, on whether it contravenes state or federal law." *Urban Renewal Comm. of Oregon City v. Williams*, 322 Or App 615, 619, 521 P3d 494 (2022), *rev den*, 371 Or 127 (2023) (internal quotation marks and brackets omitted).

LUBA focused on section 9 of Or Laws 1955, ch 756, codified at ORS 92.044(1), as the source of the county's delegated authority. ORS 92.044(1) (1961) provided:

> "The governing body of a county *** may, by regulation or ordinance, adopt standards, in addition to those otherwise provided by law, governing, in the area over which the county *** has jurisdiction under section 4 of this Act, the approval of plats of subdivisions and of partitioning of land by creation of a street or way where the additional standards are considered necessary to carry out development patterns or plans and to promote the public health, safety or general welfare. Such standards may include *** requirements for the placement of utilities, for the width and location of streets or for minimum lot sizes and such other requirements as the governing body considers necessary for lessening congestion in the streets, for securing safety from fire, flood, pollution or other dangers, for providing adequate light and air, for preventing overcrowding of land or for facilitating adequate provision of transportation, water supply, sewerage, drainage, education, recreation or other needs."

LUBA concluded that ORS 92.044(1) (1961) delegated authority to the county to regulate the division of land, and to do so "more stringently than state law, including by applying a different and more restrictive definition of 'subdivide land.'"[5]

---

[5] The parties framed the issue as involving delegated authority under ORS 92.044(1) (1961). Reading ORS 92.044(1) (1961) according to common rules of syntax and grammar, the statute permitted county governing bodies to create local standards for the approval of (1) plats of subdivisions, and (2) partitioning land by creation of a street or way, (3) when additional standards were thought necessary (a) to carry out development patterns or plans, and (b) to promote the public health, safety, or general welfare. The record does not, however, reflect the development of facts suggesting that the division of property in 1961 was related to a plat of subdivisions or that its division was associated with the creation of a

LUBA concluded that the county was subject to the one-year time limitation that had been a statutory limitation since 1955, even though the county's definition of subdividing land did not include that limitation. LUBA viewed the size limitation differently, though, characterizing the absence of the statutory acreage limit in the county's ordinance simply as evidence of the county's more "stringent" subdivision standards by including, rather than exempting, larger parcels from its approval standards. It adopted the reasoning of the hearings official:

> "State law in 1961 only required a landowner to obtain land division approval if, among other things, the land division resulted in four or more parcels and each resulting parcel was less than five acres. Ordinance No. 3, on the other hand, required land division approval even where resulting parcels were five acres or larger. In this regard Ordinance No. 3 is more onerous, or restrictive, than state law."

We conclude that LUBA's interpretation of the statutes is incorrect. LUBA's disparate treatment of the acreage and time limitations is logically inconsistent. Just as requiring county approval for plots larger than five acres is more onerous, requiring land division approval without the statutory time limitation would, by the same logic, also be more onerous in the sense that more divisions of land would likely be subject to county approval.

More fundamentally, ORS 92.044(1) (1961) affirmatively authorized counties to adopt approval standards for land divisions specifically defined by ORS 92.010(2) (1961) as having certain time and acreage limitations. The statute delegated authority to regulate those defined land divisions. It did not create exemptions from existing authority, and it did not authorize counties to expand the scope of the delegation by changing the definition of the land divisions they could regulate.

---

street or way. We note also that ORS 92.046 (1961), *amended by* Or Laws 1973, ch 696, § 10; Or Laws 1983, ch 827, § 19f; Or Laws 1989, ch 772, § 7; Or Laws 1993, ch 792, § 47; Or Laws 1999, ch 348, § 13, provided a catch-all grant of authority to county governing bodies to "adopt regulations or ordinances requiring approval *** of the partitioning of land not otherwise subject to approval" under ORS chapter 92. The parties have not raised, or developed, any arguments concerning the applicability of that statute. We need not, and do not, address such issues here.

By defining "subdivide land" to include property divided into four or more lots of any size, the county had effectively increased the scope of its delegated authority from regulating land divisions resulting in relatively small lots to regulating land divisions that resulted in much larger lots. Increasing the breadth, or scope, of the county's delegated authority is not the same as adding more stringent approval standards for land divisions over which the county had been delegated authority to regulate.

The land divisions that occurred in 1961 did not result in lots of less than five acres. Applying the law that existed at the time, before Lane County had adopted a home-rule charter, petitioners' predecessors in interest would not have been required to obtain county approval for the land division and it was unlawful in substance for LUBA to conclude otherwise.

Reversed and remanded.