No. 756 August 27, 2025 1

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Paul James BIEKER,
Cathy Marie Ross, Stephen Paul Bieker
and Jeffrey Johnbieker,
each as beneficiary of the Mary Jean Ludwick Revocable
Living Trust Dated January 16, 2015,
*Petitioners-Respondents,*
*v.*
Mary Ethel LUDWICK,
aka Sister Rosemary Ludwick, aka Mary Bieker,
as Successor Trustee of the Mary Jean Ludwick Revocable
Living Trust dated January 16, 2015,
*Respondent-Appellant,*
*and*
Barbara CRITTENDEN
and John Ludwick, Beneficiaries of the
Mary Jean Ludwick Revocable Living Trust dated
January 16, 2015,
*Respondents.*

Multnomah County Circuit Court
21PB07761; A182346

Jacqueline L. Alarcón, Judge.

Argued and submitted April 1, 2025.

Jennifer J. Martin argued the cause for appellant. Also on the briefs were Kevin O'Connell and O'Connell and Hval Law LLP.

Darlene Pasieczny argued the cause for respondents. Also on the brief were Victoria Blachly and Samuels Yoelin Kantor LLP.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.

LAGESEN, C. J.

Reversed and remanded.

**LAGESEN, C. J.**

Trustee appeals the probate court's supplemental judgment that awarded petitioners, who are beneficiaries of the trust, $45,000 in attorney fees and costs, awarded trustee $60,000 in fees and costs, and denied petitioners' request that trustee be surcharged. Trustee assigns error to the probate court's determination that petitioners were entitled to an award of fees and its correlative denial of trustee's request for an award of fees under ORS 20.105, the probate court's failure to award trustee all fees incurred in preparing the accounting requested by petitioners, and the probate court's decision to limit the award of fees to trustee to $60,000. We conclude that the probate court's supplemental judgment was based on an erroneous understanding of the law governing trustee's responsibility to furnish information to petitioners, as beneficiaries, under the Oregon Uniform Trust Code. In particular, the award of fees demonstrates that the probate court erroneously concluded that trustee's statutory obligations to provide information required trustee to provide petitioners with information beyond what trustee routinely provided to petitioners. Accordingly, we reverse the award of fees and remand for the court to consider the parties' competing fee requests based on a correct understanding of the law.

To contextualize our disposition of the case, we lay out the facts that led to the probate proceedings, then we describe the proceedings in the probate court, and finally we turn to the probate court's analysis of its attorney fee award.

The Mary Jean Ludwick Trust (the trust) is administered by Mary Ludwick (trustee), who is one of the decedent's children. The trust's sole asset was a duplex property. The decedent lived in one of the units and rented out the other to a third-party tenant. Under the terms of the trust, trustee was to sell the duplex upon assuming the role of administrator, and the proceeds of that sale were to be distributed among the beneficiaries.

The trust has four categories of beneficiaries, and each group has a 25 percent interest in the net proceeds from the sale of the duplex property: (1) the four petitioners Paul James Bieker, Cathy Marie Ross, Stephen Paul Bieker, and

Jeff John Bieker, the decedent's grandchildren, (2) trustee Mary Ethel Ludwick, as an individual and the decedent's child, (3) John Richard Ludwick, the decedent's child, and (4) Barbara Ann Ludwick Crittenden, the decedent's child.[1]

The decedent passed away on April 24, 2019, and trustee assumed the role of administrator of the trust. The next week, trustee mailed to all beneficiaries of the trust, including petitioners, a letter stating that they were entitled to certain proceeds from the decedent's life insurance policy. Nineteen days later, trustee notified petitioners by mail that, upon further information from the life insurance company, they would not be receiving any proceeds from the decedent's life insurance policy because only the decedent's children were named as beneficiaries to the policy, and there was no transfer of ownership to petitioners. Only Barbara Crittenden, John Ludwick, and trustee (in her individual capacity) were entitled to proceeds from the life insurance policy. Petitioners did not respond to that follow up.

Trustee then began the process for selling the duplex property and opened a bank account in the name of the trust in which rent proceeds were deposited. At the time of the decedent's passing, the fair market value of the duplex was around $708,000, and was listed for sale on November 15, 2019, for $795,000. The duplex remained on the market for some time without any activity, and the sale price was reduced to $745,000. The duplex was taken off the market for repairs in early 2021 and relisted in April 2021 for $699,000. The duplex ultimately sold for $629,000 and the sale was set to close on September 17, 2021. Net proceeds to the trust from the sale totaled $593,415.58.

Throughout the sale process, trustee kept all beneficiaries, including petitioners, informed about the status and finances of the property. Trustee provided the first official correspondence about those matters on January 15, 2020, in which she informed all beneficiaries about the duplex listing, the lack of sale activity, and provided rental income reports. Trustee also noted that she had advanced a loan

---

[1] Petitioners are the children of another of the decedent's children, Beverly Bieker. Beverly predeceased the decedent, so petitioners were to take Beverly's share of the ultimate distribution from the trust.

to the trust to cover property taxes because the trust did not have enough funds to cover property taxes. Petitioners confirmed receipt of that letter a week later and asked for copies of the trust, the decedent's will, and a "full financial accounting as of the date of [the decedent's] death." Four days later, trustee sent petitioners a letter responsive to petitioners' request, including full financial disclosures about the status of the trust. In that response, trustee included typed-out and handwritten ledgers regarding financial activity of the trust from October 2019 to January 2020.

The record does not contain a response from petitioners to that follow-up, or any communications between the parties from January 2020 to June 2020. On July 11, 2020, trustee provided all beneficiaries an update on the status of the sale of the duplex, a rent increase for the tenant, and explained that the vacant unit was not being rented out because the duplex was being marketed "as a[n] owner live-in unit." Trustee provided an additional, digitized income/expenses report for the trust from January 1, 2020, to June 31, 2020. Petitioner Jeff Bieker texted trustee in December 2020 thanking her for administering the trust, letting her know that petitioner John Bieker was "very happy with [trustee] and all she is doing currently...so if [all are] happy...I'm happy too."

Communications between the parties from December 2020 to March 2021 were sparse, apparently because of the lack of sale activity. In a letter dated March 11, 2021, Mackenzie Hogan—then-counsel for petitioner Jim Bieker—sent a letter to Kevin O'Connell—counsel for trustee—noting that they had "some concerns related to the administration of" the trust and sought several things. Among those, Hogan asked whether "there [was] a plan to provide any sort of formal accounting soon" and asked O'Connell to "thank [trustee] for staying on top of the income and expenses."

On March 13, 2021, trustee provided to beneficiaries, including petitioners, a "2020 annual report of the Income/Expenses for [the] Duplex," which outlined the rental income and expenses from January 1, 2020, to December 31, 2020. That letter also provided an update on the sale strategy for the duplex. Trustee let beneficiaries know that she would send a "quarterly financial report mid-April [2021]

that will show an up to date report of income/expenses." On March 18, 2021, O'Connell responded to Hogan's letter with trustee's March 13, 2021 letter and income/expenses report.[2] O'Connell did not address the inquiry about a "formal accounting," but stated that each petitioner is entitled to a distribution of funds after the duplex sold.

On April 15, 2021, trustee followed up and provided an accounting for the duplex for the time period of January 1, 2021, to April 10, 2021. The accounting comprised of two income/expenses sheets covering the date range of January 1, 2021, to April 10, 2021; several invoices, checks, and receipts related to repairs to the duplex and bookkeeping services; attorney fees paid to O'Connell's law firm; and the cover sheet for the trust's 2020 tax forms. O'Connell forwarded trustee's accounting report to Victoria Blachly—counsel for petitioners—a few days later.[3]

Blachly believed that trustee's accounting reporting "f[e]ll very short of being an actual trust accounting." She asked that trustee provide, before June 30, 2021, "a full comprehensive trust accounting, with copies of bank statements, checks, receipts, leases, any and all backup materials and an inventory of all personal property and to whom it has been distributed. This accounting needs to include information as to why the Trustee lent the Trust money for taxes when there should have been sufficient funds coming in from the duplex rental." Blachly's letter also expressed concerns about the authenticity of a will document, the distribution of life insurance proceeds, and about the lack of activity in selling the duplex.

In response, O'Connell explained that petitioners were not beneficiaries to the life insurance policy, that the policy was not a trust asset, and because of that, trustee had no obligation to further explain the policy to beneficiaries. O'Connell also provided a copy of the decedent's designation of personal property. O'Connell did not respond to Blachly's demand for a "full accounting."

_____

[2] O'Connell could not respond earlier because he was away from the office.

[3] Blachly and her firm began representing petitioners after Hogan believed that trustee's April 15, 2021, accounting "was too vague." Blachly was hired "to further investigate" the situation.

Around June 18, 2021, trustee notified petitioners that she had accepted an offer to close on the duplex, and O'Connell notified Blachly about the sale. On June 27, trustee provided another reporting for the trust to O'Connell, who then forwarded it to Blachly on July 7, 2021. That report included handwritten income/expenses accounts for the period from June 2019 to May 2021 and several bank statements for the trust. O'Connell informed Blachly that "[a]nother accounting will be prepared as of June 30, 2021." Trustee sent petitioners another income/expenses report on July 13, 2021, covering the date range of January 1, 2021, to June 30, 2021.

Petitioners did not respond to that latest report. Instead, on August 13, 2021, Blachly mailed to O'Connell a letter with

"a DRAFT Petition, seeking removal of your client, Mary Ethel Ludwick, as Trustee of the Mary Jean Ludwick Trust. My clients, the four Petitioners, are committed to filing the petition, unless your client agrees to step down as Trustee and have a professional successor trustee appointed to administer the Trust.

"If I do not receive confirmation that your client will step down and that her brother will decline to serve as the successor trustee, on or before August 26, the attached [petition] will be filed and resulting legal fees will be requested to be paid from your client, personally."

Trustee provided a follow-up report to petitioners on September 2, 2021. That report provided summaries of income and expenses from the trust fund ranging from July 1, 2021, to August 31, 2021, bills paid, bank statements for the trust account, receipts and contracts for services and repairs for work done to the property, and a copy of the sale agreement for the property.

Petitioners did not respond. They instead filed their Petition to Remove Trustee, Require Accounting, Assess Surcharge, and Appoint a Successor Trustee on September 12, 2021—only a few days before the sale of the duplex was set to close.

After petitioners filed their petition, trustee provided to petitioners another report for the trust with the trust's bank

statements for September and October 2021, receipts and disbursements for the trusts, and an accounting sheet covering the period of September 21, 2021, through October 31, 2021.

In their petition, petitioners asserted that trustee had "failed to perform her fiduciary duties by failing to keep beneficiaries informed, through meetings or sufficient correspondence and has failed to provide any accountings or statements from financial institutions." According to petitioners, that alleged failure, along with trustee's alleged failure "to meaningfully respond to requests for information and accountings *** forced petitioners to initiate the instant court proceedings in order to ensure effective administration of the trust."

Trustee denied all allegations of wrongdoing. She responded that she "regularly kept all the beneficiaries of the Trust reasonably informed about the administration of the Trust [by] providing regular, continuous, timely, and ample correspondence to the Beneficiaries. That correspondence contained detailed information and documents as to the Trust accounting and the material facts necessary for the beneficiaries to protect their interests." She set out the various communications and reports provided to petitioners and other beneficiaries, as outlined above. She also stated that she was ready to submit a final accounting for approval to the court.

The other beneficiaries to the trust, Barbara Crittenden and John Ludwick, joined the probate case and objected to the petition. In addition to believing that trustee had properly prepared the trust for closing, Crittenden and Ludwick contended that the petition was filed in "bad faith for the purpose of retaliating against the trustee because she was once their aunt and is now married to the petitioners' father," and that the petition was "an effort to disparage the trustee, interfere with her marital relationship and to affect the outcome of the trustee's inheritance from her husband's estate."

The parties scheduled mediation for February 7, 2022. In advance of mediation, petitioners requested certain information: copies of all bank statements for the trust, documents related to trustee's personal loan to the trust for roof replacement, life insurance payouts, and all of the decedent's medical records. Trustee responded via email and

provided answers responsive to petitioners' requests, except for the decedent's medical records that trustee believed were irrelevant to the trust matter. Petitioners, believing that the medical records would reveal that trustee may have improperly influenced the decedent's trust and will, insisted on the medical records and sought to subpoena the records themselves. Trustee moved to quash the subpoenas on relevance grounds. In response, petitioners canceled the February 7 mediation, claiming that they were doing so because of trustee's motion to quash.

Trustee submitted to the court a "Trustee Report and Accounting" on March 21, 2022, and moved the court to approve it and to delay final trust distributions and closing of the trust pending the outcome of the litigation. Trustee attached over 1,300 pages of documents to the accounting, which was comprised of a digitized spreadsheet ledger outlining the trust's financial activity from October 2019 to September 2021, and accompanying invoices, receipts, and checks for those duplex-related expenses from the trust, and bank statements. Petitioners lodged some complaints about the amount of time trustee took to provide the accounting along with complaints about the administration of the trust and other unrelated information, but did not object to the accounting, nor did they claim that trustee was required to provide any additional information. They moved to approve the accounting.

In moving to approve the accounting, petitioners asserted that the only issue from their petition that remained pending was attorney fees. They contended that they were entitled to fees because, in their view, they were "forced to incur attorney fees and costs" because "without the action brought by Petitioners, Trustee would not have provided this level of necessary information to the beneficiaries" and sought an evidentiary hearing on fees.

Trustee also claimed an entitlement to fees. She contended that she kept petitioners informed about trust matters "with regular accounting reports since becoming successor Trustee, satisfying the reporting obligations found in ORS 130.710(3) as well as continuously and diligently keeping the beneficiaries well informed about the

administration of the trust and the material facts necessary for [petitioners] to protect their interests." Trustee also questioned petitioners' motives for initiating the lawsuit in light of the information she provided in advance of litigation: "If more information is what [petitioners] claim to have been their reason for instituting this litigation, then why in response to receipt of these detailed accounting reports, bank statements, receipts, and copies of disbursed checks, did [petitioners'] counsel issue a demand letter, not for more information, but for total surrender[?] * * * Contrary to [petitioners'] allegations, they were not 'forced' to litigate this matter, they could have just asked [for more information]."

Thereafter, petitioners withdrew their notices of subpoenas, trustee agreed to withdraw her motions to quash the subpoenas, and the parties agreed that a trial date needed to be set "on the other open issues," namely, attorney fees. Petitioners, though, never dismissed the claims in their petition or filed notice to the court that they were being withdrawn, and trustee took issue with that because, to her, if the case was still open, then trustee wanted a hearing on the subpoenas and the underlying petition. That prompted trustee to not withdraw her motions to quash the subpoenas.

The probate court ultimately approved trustee's report and accounting and delayed final distributions to beneficiaries from the trust until the end of the litigation. The court held a hearing on the remaining matters, and all parties appeared to agree that the only remaining issues were the allocation of attorney fees and trustee's counterclaims for surcharge on petitioners.[4] By that point, trustee was no longer amenable to trying a judicial settlement conference to resolve the open issues and demanded a trial on the matters. All beneficiaries expressed interest in a judicial settlement conference. The probate court scheduled a trial over attorney fees and a possible surcharge.[5]

---

[4] That counterclaim was premised on whether petitioners "should be surcharged and required to reimburse the trust's legal fees in defending the frivolous litigation they brought."

[5] The court criticized the attorneys for the amount of time being spent on the case. The court recognized that the trust was worth less than a million dollars, observed the number of attorneys on the case, and remarked that the attorneys' conduct had been overblown.

After the hearing, trustee filed a motion for summary judgment on petitioners' primary claims in their petition that were never withdrawn or dismissed. Trustee's arguments in support were two-fold: first, she argued that petitioners could not "produce evidence supporting their allegations," but that their communications indicated that petitioners wanted to reserve the right to pursue claims in the future. Second, trustee argued that petitioners' claims were moot because petitioners had represented that they were limiting the scope of the litigation to attorney fees and costs.

After that motion was filed, the parties could not agree on how to proceed. Petitioners drafted a stipulated notice of dismissal and notice of withdrawal of motion for summary judgment, to which trustee objected because trustee felt as though petitioners had misrepresented the underlying facts that led to the dispute, particularly about petitioners' request for additional information before they initiated the lawsuit.

As a result of not being able to reach an agreement, petitioners objected to summary judgment and moved to strike the motion. They argued that the motion did not raise any contested issues because they were no longer pursuing the claims and contended that the motion was instead meant "to trap the Petitioners in some sort of general civil procedure game, where she spends legal fees on a motion for summary judgment for claims she knows the Petitioners are not pursuing."

While the parties argued over the motion for summary judgment, they were also arguing over fees. Petitioners' counsel sought over $56,000 in fees plus costs. They argued that their incurred fees were necessary and reasonable to finally prompt trustee to provide the accounting and contended that they tried to keep their fees down by "narrowing the remaining claims to the matter of attorney fee requests" after trustee submitted the accounting.

Trustee's counsel sought close to $125,000 in fees, plus costs and expert witness fees, about $22,000 of which made up the work done to prepare the accounting and about $10,000 to prepare the motions to quash the subpoenas.

Trustee's counsel contended that trustee complied with, and exceeded, all of her statutory duties to provide beneficiaries statutorily required information.[6]

In a letter opinion and supplemental judgment, the probate court awarded petitioners $45,000 in fees and awarded trustee $60,000. With respect to the decision to award petitioners fees, the court reasoned that petitioners "attempted to obtain an accounting that conformed with the statutory authority, rules and standard practice prior to filing a court action" and that they did so "with ample opportunity" "prior to the filing of their claim" by "provid[ing] drafts of their Petition, in advance of filing [it] to hopefully avoid the necessity of involving the Court." With respect to the amount awarded, the court reasoned, by implication, that petitioners' accrued fees in requesting an accounting prior to initiating litigation were reasonable. In reducing petitioners' award of fees, the court reasoned that a reduction was warranted due to their cancellation of mediation, communicating unclear expectations regarding what they sought from trustee in their requests for information, and their subpoenaing the medical records from the decedent's medical providers.

With respect to the decision to award trustee fees, the court's reasoning is somewhat opaque, but its letter opinion implied that trustee was entitled to fees for having to respond to the petition, preparing an accounting at petitioners' request, and responding to petitioners' subpoenas to the medical facilities. With respect to the amount of fees, the court reduced trustee's requested fees because it believed that "[t]here was no reason to bill Petitioners the $22,000+ that [she] did for an accounting that was required. There was no reason to file a Motion for Summary Judgment and Motion to Strike when [the court's] Order made it blatantly clear that there were no other issues but attorney fees and costs to address." The probate court also believed that trustee billing over $10,000 in preparing and filing "simple Motions to Quash [was] excessive," and it took trustee's conduct to be driven by "animosity" and emotion rather than by the best interests of the clients.

---

[6] Counsel for beneficiaries Crittenden and Ludwick sought about $10,000 in fees and the court awarded him $7,000. That fee award is not at issue on appeal.

Trustee appeals. On appeal, trustee assigns error to (1) the probate court's determination that petitioners were entitled to an award of fees and its correlative denial of trustee's request for an award of fees under ORS 20.105; (2) the probate court's failure to award trustee all fees incurred in preparing the accounting requested by petitioners; and (3) the probate court's decision to limit the award of fees to trustee to $60,000. For the reasons that follow, we conclude that the probate court's decision to award fees to petitioners, and its fee award to trustee, were based on a misunderstanding of the law governing trustee's responsibility to provide information under the Oregon Uniform Trust Code and, in particular, the court's mistaken belief that trustee was required to provide petitioners, as beneficiaries, with information beyond what trustee routinely provided to petitioners. We therefore reverse and remand for the court to consider the parties' competing fee requests based on a correct understanding of the law.

Our standard of review for the probate court's award of fees is mixed. We review a party's entitlement to fees for legal error and the court's factual determination regarding the reasonableness of fees for abuse of discretion. ORS 20.075(3); *Makarios-Oregon, LLC v. Ross Dress-for-Less, Inc.*, 293 Or App 732, 739, 430 P3d 142, *adh'd to as modified on recons*, 295 Or App 449, 430 P3d 1125 (2018). "However, the proper exercise of discretion may be predicated on the [probate] court's determinations of questions of law or fact—and those determinations, in turn, may implicate independent standards of review." *Niman and Niman*, 206 Or App 400, 415, 136 P3d 1186 (2006). As in this case, "the determination whether the parties' claims or defenses were 'objectively reasonable' [under] ORS 20.075(1)(b), is a question of law." *Id*. (internal citations omitted).

We begin with the law applicable to a trustee's duties owed to beneficiaries and then turn to the court's award of fees.

The Oregon Uniform Trust Code (OUTC) provides general and specific duties a trustee of an irrevocable trust, such as the one here, owes beneficiaries of a trust. The general duty is that the trustee "shall administer the trust in good faith, in accordance with its terms and purposes and

the interests of the beneficiaries, and in accordance with" the OUTC. ORS 130.650(1).

The specific duties are several, *see e.g.*, ORS 130.655 (duty of loyalty); ORS 130.660 (duty of impartiality), and the primary one at issue in this case is a trustee's duty to keep "qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for those beneficiaries to protect their interests."[7] ORS 130.710(1); *Tseng v. Tseng*, 271 Or App 657, 661, 667, 352 P3d 74, *rev den*, 328 Or 69 (2015).

That duty to inform and report "is ordinarily satisfied by providing the qualified beneficiary with a copy of the annual report mandated by [ORS 130.710(3)] and responding to any reasonable requests for relevant information." Valerie Vollmar, *The Oregon Uniform Trust Code and Comments*, 42 Willamette L Rev 187, 360 (2006) (OUTC Comments). The "key factor" in determining whether a trustee has complied with the duty to inform and report "is not the format chosen" for communicating trust-related information, but rather "whether the report provides the beneficiaries with the information necessary to protect their interest." *Id*. at 362. In adopting the OUTC, the legislature

> "employ[ed] the term 'report' instead of 'accounting' in order to negate any inference that the report must be prepared in any particular format or with a high degree of formality. The reporting requirement might even be satisfied by providing the beneficiaries with copies of the trust's income tax returns and monthly brokerage account statements if the information on those returns and statements is complete and sufficiently clear."

*Id*.

---

[7] A "qualified beneficiary" is a beneficiary who:

"(a) Is a permissible distributee on the date the beneficiary's qualification is determined;

"(b) Would be a permissible distributee if the interests of all permissible distributees described in paragraph (a) of this subsection terminated on the date the beneficiary's qualification is determined; or

"(c) Would be a permissible distributee if the trust terminated on the date of the beneficiary's qualification is determined."

ORS 130.010(14). The parties do not dispute that petitioners are "qualified beneficiaries" entitled to receive information about the trust.

The commentary makes clear that a trustee satisfies the duty to inform and report by providing, at a minimum, an annual report that lists "trust property and liabilities, and must show the market values of trust assets, if feasible. The report must reflect all receipts and disbursements of the trust, including the source and the amount of the trustee's compensation." ORS 130.710(3); *see also Restatement (Third) of Trusts* § 82 comment d (2007) (the requirement to keep beneficiaries reasonably informed "does not impose a regular routine requirement of reporting or accounting."). "However, special circumstances may require that the trustee provide additional information." OUTC Comments at 360. Such special circumstances include a trustee providing advance notice of transactions involving real estate. *Id.*; *see also Restatement* § 82 comment d (The duty to furnish information "does, however, impose an affirmative requirement that, if and as circumstances warrant over the course of administration, the trustee inform [beneficiaries] of important developments and information that appear reasonably necessary for the beneficiaries to be aware of in order to protect their interests."). The OUTC also allows a trustee to "charge a reasonable fee to a beneficiary for providing information under" the code. ORS 130.710(5).

A trustee's violation of any duty owed to beneficiaries, either by action or inaction, is a breach of trust, which can be remedied by a court upon an action by the beneficiaries. ORS 130.800(1). In those circumstances, the court may order a variety of remedies, including "[c]ompel[ling] the trustee to perform the trustee's duties," "[o]rder[ing] a trustee to account," "[s]uspend[ing] the trustee," and any other appropriate relief. ORS 130.800(2)(a), (b), (f), (j).

In "a judicial proceeding involving the validity or administration of a trust, the court may award costs and expenses and reasonable attorney's fees to any party, to be paid by another party or from the trust." ORS 130.815. In determining whether to award fees and the amount to award, a court "shall consider" the factors contained in ORS 20.075. If a court decides to reduce a party's fee award from that requested by the party, the court must explain the

"rational nexus between the factor invoked, and its underlying circumstances, and the amount of the reduction." *Grisby v. Progressive Preferred Ins. Co.*, 233 Or App 210, 222, 225 P3d 101 (2010).

With those standards in mind, we turn to the parties' arguments on appeal. Trustee first assigns error to the probate court's determination that petitioners were entitled to an award of fees under ORS 130.815 and its correlative denial of trustee's request for an award of fees under ORS 20.105. Trustee argues that petitioners are not entitled to fees under ORS 130.815 because their "claims lacked an objectively reasonable basis," argues that she is entitled to a mandatory award of fees under ORS 20.105 because, in her view, the absence of an objectively reasonable basis for petitioners' claims that were ultimately dropped by petitioners made her the prevailing party under that statute, and argues that she is entitled to enhanced prevailing party fees under ORS 20.190(3). In response, petitioners argue that ORS 20.105 and ORS 20.190 are inapplicable in this case and maintain that they were entitled to their fee award under ORS 130.815.

We agree with petitioners that ORS 20.105 and ORS 20.190 are inapplicable in this case. Those statutes by their terms apply only when a "party is a prevailing party" and, with respect to ORS 20.105, when "the trial court finds that a party willfully disobeyed a court order or pursued a claim or defense with 'no objectively reasonable basis.'" *Williams v. Salem Women's Clinic*, 245 Or App 476, 482, 263 P3d 1072 (2011). The probate court in this case did not make such a finding, and, given that the probate court never adjudicated the merits of either petitioners' claims or trustee's defenses, there was no favorable judgment for either party on the claims, and so there is no "prevailing party" as that term is used in ORS 20.105 and ORS 20.190. *See e.g.*, *id.* at 481 (ORS 20.105 applies when a trial court rules on the merits of a party's claims); *Andlovec v. Spoto*, 326 Or App 525, 527, 532 P3d 531 (2023) (ORS 20.015 applied after ruling on the merits delivered on summary judgment); *Mattiza v. Foster*, 311 Or 1, 3, 7, 803 P2d 723 (1990) (award of attorney

fees under ORS 20.105 tied to prevailing party status in the proceeding).[8]

In arguing she was entitled to a mandatory fee award under ORS 20.105, trustee relies on *Lewis v. Worley*, 318 Or App 127, 507 P3d 814 (2022). That case does not support trustee's position. *Worley* concerned trust claims brought by a beneficiary of a revocable trust against the settlor-trustee. The trial court ruled that the beneficiary had standing to pursue the claims but ruled against the beneficiary on the merits because it determined that the evidence did not support the claims, except for requiring the settlor-trustee to account to the conservator, and it entered a judgment reflecting its ruling. *Id*. at 129-31. In reviewing competing petitions for attorney fees, the trial court denied the settlor-trustee's request for a mandatory fee award under ORS 20.105, determining that the beneficiary's claims were objectively reasonable, and instead looked to ORS 20.075(1). *Id*. at 131-33. On appeal of the award of fees, we held that the trial court erred in determining that the beneficiary had standing to pursue the claims because the actions by the settlor-trustee of a revocable trust cannot harm beneficiaries to such a trust while the settlor remains alive, and thus the beneficiary did not have an objectively reasonable basis to pursue the trust claims. *Id*. at 135-39.

---

[8] We have applied the same principle—that there is no "prevailing party" entitled to mandatory fees when a court does not adjudicate the merits of the claim purported to give rise to fees—in a different context. *See Chinese Consolidated Benevolent Assn v. Chin*, 316 Or App 514, 504 P3d 1196 (2021), *rev den*, 369 Or 855 (2022). There, a dispute among the board members and officers of the Chinese Consolidated Benevolent Association led to a complaint seeking to enjoin the defendants from making statements "purporting to be made on behalf of the" association. *Id*. at 516. The defendants filed a special motion to strike under ORS 31.150, known as an "anti-SLAPP" motion. *Id*. at 517. Before the trial court ruled on the anti-SLAPP motion, the plaintiffs dismissed the lawsuit for reasons unrelated to the motion. The defendants moved for an award of attorney fees under *former* ORS 31.152 (2017), contending that they were "prevailing parties" on the view that their anti-SLAPP motion caused the plaintiffs to dismiss the lawsuit, petitioned for attorney fees, and the trial court denied the fees. In affirming the denial of fees, we held that the defendants were not entitled to fees because the defendants did not prevail on the special motion to strike given that the trial court never adjudicated the merits of that motion. *Id*. at 519-20 (citing *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 US 598, 603, 121 S Ct 1835, 149 L Ed 2d 855 (2001)). We note that in 2023, the legislature amended ORS 31.152 to allow for attorney fees in connection an anti-SLAPP motion filed in a case that is voluntarily dismissed. 2023 Or Laws ch 71, § 2.

Therefore, the applicable statute for a determination of fees in that case was ORS 20.105 and not ORS 20.075. *Id*. at 139.

Here, as noted, the probate court did not resolve the merits of petitioners' claims, did not make any determination as to the objective reasonableness of their claims, and thus there is no "prevailing party" that is entitled to mandatory fees. That makes ORS 20.105 and ORS 20.190 inapplicable. Rather, as the probate court correctly identified, the applicable statutory authority for an award of fees is ORS 130.815 and ORS 20.075. This case concerns the administration of a trust under ORS 130.815, which serves as the statutory authority that gives a court discretion to award fees. ORS 20.075, in turn, provides factors that a court must consider when "an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees[.]"

ORS 20.075(1) provides eight factors for a court to determine a party's entitlement to fees, and subsection (2) provides nine additional factors for a court to consider in determining the amount of fees to award. As we will explain, the probate court's analysis of those factors was premised on an erroneous understanding of trustee's duties to furnish information to petitioners.

In concluding that petitioners were entitled to fees and in reducing trustee's requested fees, the probate court relied on its belief that trustee was "required" to provide petitioners "an accounting that conformed with the statutory authority, rules and standard practice prior to filing a court action," and deemed the amount trustee billed petitioners for that work "unnecessary." But, as explained above, the OUTC does not require that a trustee provide an accounting to petitioners. OUTC Comments at 362. The OUTC requires only that a trustee, in furnishing information to beneficiaries of a trust under ORS 130.710, provide "at least annually and upon termination of a trust," a "trustee report" with information about the "trust property and liabilities, and must show the market values of trust assets." ORS 130.710(3)(a); OUTC Comments at 362. Indeed, in enacting the OUTC and crafting a trustee's duty to furnish information to beneficiaries, the legislature intentionally used the

term "report" instead of "accounting" "to negate any inference that the report must be prepared in any particular format or with a high degree of formality." OUTC Comments at 362.[9]

Here, as detailed above, the record compels the conclusion that trustee satisfied her statutory duties to inform and report. The trust itself was a simple one: it contained only a single asset required to be sold. As trustee worked the sale, she submitted several financial reports to all beneficiaries of the trust—including petitioners—that provided them with sufficient information to protect their interest in the ultimate distribution of funds from the trust after the duplex sold. Those reports included updates on the sale and value of the duplex, market conditions impacting that value and sale process, ledgers outlining the income and expenses to the trust fund with accompanying receipts and invoices, and bank statements. Trustee provided that information to petitioners on a regular basis, at times without petitioners requesting additional information. All of trustee's financial reports provided to petitioners before they filed their petition satisfied her duties to report and keep petitioners informed about the trust sufficient to protect their interest in the ultimate distribution as contemplated by ORS 130.710(3).

The accounting that trustee ultimately submitted to the court for approval contained much of the same information that trustee had provided to petitioners prior to them filing their petition. The primary difference was that the accounting submitted for approval was a digitized spreadsheet with additional bank statements and documentation not previously provided whereas trustee's prior reports were less-organized handwritten ledgers, copies of receipts, invoices, and bank statements. As the commentary to the OUTC shows, however, the "key factor" in a trustee's compliance with the duties to inform and report "is not the format chosen," but rather "whether the report provides the beneficiaries with the information necessary to protect their interests." OUTC Comments at 362. Here,

---

[9] In response to the legislature's employment of the term "trust report" instead of "accounting," petitioners brush the difference off as a matter of "semantics." That argument is unavailing in light of the OUTC comments disclaiming that a trustee has no duty to provide an "accounting."

trustee's reporting did just that.[10] To date, petitioners have not explained why the information provided to them was insufficient to permit them to protect their interests and, on its face, the information was plainly adequate to allow the beneficiaries to assess how trustee's management of the duplex and efforts to sell it were affecting their interests.

Therefore, the probate court's belief that trustee owed petitioners an accounting rested on an erroneous understanding of a trustee's duties owed to beneficiaries under the OUTC. And that erroneous understanding influenced the probate court's award of fees to petitioners and its reduction of fees awarded to trustee. The court's analysis of ORS 20.075(1)(b) shows that the court believed that petitioners' claims for an accounting and removal of trustee were objectively reasonable because "Petitioners provided [trustee] with ample opportunity to provide an accounting prior to the filing of their claim," and "provided drafts of their Petition, in advance of filing [it] to hopefully avoid the necessity of involving the Court." Though, as we have explained, there is nothing in the law that required trustee to provide petitioners an accounting. Thus, on remand, the probate court must reevaluate its award of attorney fees to trustee and petitioners with the proper legal standards governing a trustee's duty to furnish information, as we have outlined it above.

In the second and third assignments of error, trustee argues, respectively, that the probate court erred when it denied her request under ORS 130.710(5) to charge petitioners for the costs incurred to prepare the accounting ultimately approved by the court, and that the court erred when it limited her fee recovery to $60,000. Petitioners respond that the court was authorized to reduce trustee's fee award if it found the incurred costs unreasonable.

As we understand the probate court's reasoning, it declined to charge petitioners for the accounting based on its view that the OUTC required trustee to provide one to

---

[10] The only applicable "special circumstance" that required trustee to provide additional information was the sale of the duplex—which was the only asset held by the trust—so trustee's reporting also necessarily satisfied the "additional information" requirement triggered by the special circumstance of transactions involving real estate. OUTC Comments at 360.

petitioners as a matter of course. But, as discussed above, the OUTC did not require trustee to provide petitioners with an accounting; it simply required trustee to supply petitioners with information sufficient to permit them to protect their interests. The probate court on remand can consider whether petitioners should bear any of the cost of the accounting in view of this understanding of the law.

Accordingly, we reverse and remand the probate court's supplemental judgment of attorney fees for further proceedings consistent with our opinion. On remand, the probate court shall also consider the nine factors contained in ORS 20.075(2) in determining its award of attorney fees.

Reversed and remanded.